# EXHIBIT 1

.17-427030

**Secretary of State**
**Statement of Information**
(Limited Liability Company)

LLC-12

8

**FILED**
Secretary of State
State of California

MAR 0 2 2017

**IMPORTANT** — ~~Read instructions~~ before completing this form.

**Filing Fee** – $20.00

**Copy Fees** – First page $1.00; each attachment page $0.50;
Certification Fee - $5.00 plus copy fees

This Space For Office Use Only

**1. Limited Liability Company Name** (Enter the exact name of the LLC. If you registered in California using an alternate name,                           )

MANIOS PROPERTIES LLC

**2. 12-Digit Secretary of State File Number**

201024410306

**3. State, Foreign Country or Place of Organization** (only if formed outside of California)

**4. Business Addresses**

| a. Street Address of Principal Office - Do not list a P.O. Box | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 487 SINALDA RD | SIMI VALLEY | CA | 93065 |
| b. Mailing Address of LLC, if different than Item 4a | City (no abbreviations) | State | Zip Code |
| | | | |
| c. Street Address of California Office, if Item 4a is not in California - Do not list a P.O. Box | City (no abbreviations) | State | Zip Code |
| | | CA | |

**5. Manager(s) or Member(s)** — If no managers have been appointed or elected, provide the name and address of each member. At least one name and address must be listed. If the manager/member is an individual, complete Items 5a and 5c (leave Item 5b blank). If the manager/member is an entity, complete Items 5b and 5c (leave Item 5a blank). Note: The LLC cannot serve as its own manager or member. If the LLC has additional managers/members, enter the name(s) and addresses on Form LLC-12A (                           ).

| a. First Name, if an individual - Do not complete Item 5b | Middle Name | Last Name | Suffix |
|---|---|---|---|
| STEVEN | E | MANIOS | |
| b. Entity Name - Do not complete Item 5a | | | |
| | | | |

| c. Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 487 SINALDA RD | SIMI VALLEY | CA | 93065 |

**6. Service of Process** (Must provide either Individual OR Corporation.)

INDIVIDUAL - Complete Items 6a and 6b only. Must include agent's full name and California street address.

| a. California Agent's First Name (if agent is not a corporation) | Middle Name | Last Name | Suffix |
|---|---|---|---|
| STEVEN | E | MANIOS | |
| b. Street Address (if agent is not a corporation) - Do not enter a P.O. Box | City (no abbreviations) | State | Zip Code |
| 487 SINALDA RD | SIMI VALLEY | CA | 93065 |

CORPORATION - Complete Item 6c only. Only include the name of the registered agent Corporation.

| c. California Registered Corporate Agent's Name (if agent is a corporation) - Do not complete Item 6a or 6b |
|---|
| |

**7. Type of Business**

a. Describe the type of business or services of the Limited Liability Company

RENTAL PROPERTY

**8. Chief Executive Officer, if elected or appointed**

| a. First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |
| b. Address | City (no abbreviations) | State | Zip Code |
| | | | |

**9. The information contained herein, including any attachments, is true and correct.**

| Date | Type or Print Name of Person Completing the Form | Title | Signature |
|---|---|---|---|
| 2/24/17 | Steven E. Manios | Manager | [signature] |

**Return Address (Optional)** (For communication from the Secretary of State related to this document, or if purchasing a copy of the filed document enter the name of a person or company and the mailing address. This information will become public when filed. ~~READ INSTRUCTIONS~~ BEFORE COMPLETING.)

Name: ⌈

Company:

Address:

City/State/Zip: ⌊

LLC-12 (REV 01/2017)

2017 California Secretary of State
www.sos.ca.gov/business/be

# EXHIBIT 2

1  Michael N. Poli (State Bar No. 006431)
2  MPoli@merlinlawgroup.com
   Kesha A. Hodge (State Bar No. 021824)
3  KHodge@merlinlawgroup.com
   MERLIN LAW GROUP, P.A.
4  2999 North 44th Street, Suite 520
5  Phoenix, Arizona 85018
   Telephone:    (480) 315-9980
6  Facsimile:    (480) 315-9984
7  *Attorneys for Plaintiff*

8              ARIZONA SUPERIOR COURT

9              MARICOPA COUNTY        CV2017-006038

10

11  MANIOS PROPERTIES, LLC, a California    Case No.:
    limited liability company,
12
13              Plaintiff,                      SUMMONS

14      v.                                 *If you would like legal advice from a lawyer,*
                                           *contact the Lawyer Referral Service at*
15                                         *602-257-4434*
    RIVERPORT INSURANCE COMPANY OF              *or*
16  CALIFORNIA, an Iowa corporation,      *www.maricopalawyers.org*
                                          *Sponsored by the*
17              Defendant.                *Maricopa County Bar Association*

18

19  TO THE DEFENDANT:

20      **RIVERPORT INSURANCE COMPANY OF CALIFORNIA**
        **c/o Arizona Department of Insurance**
21      **Director of Insurance**
        **2910 N. 44th Street, Second Floor**
22      **Phoenix, Arizona 85018**

23      YOU ARE HEREBY SUMMONED and required to appear and defend, within the time

24  applicable, this action in this Court.  If served within Arizona, you shall appear and defend within

25  20 days after the service of the summons and complaint upon you, exclusive of the day of service.

26  If served outside Arizona, you shall appear and defend within 30 days after the service of the

27

T1612744 DOCX.1                          1

summons and complaint upon you, exclusive of the day of service.  Other provisions of law which may apply to you can be found at 16 A.R.S. Rules of Civil Procedure, Rule 4; A.R.S. §§ 20-222, 28-502, and 28-503.

YOU ARE HEREBY NOTIFIED that if you fail to appear and defend within the time applicable, judgment by default may be rendered against you for the relief demanded in the complaint.

YOU ARE CAUTIONED that in order to appear and defend, you must file an answer or proper response in writing with the Clerk of this Court, accompanied by the necessary filing fee, within the time required, and you are required to serve a copy of any answer or response upon the Plaintiffs' attorney.  RCP 10(d); A.R.S. § 12 311; RCP 5.

The contact information for Plaintiffs' attorneys is as follows:

> Michael N. Poli     /     Kesha A. Hodge
> MERLIN LAW GROUP, P.A.
> 2999 North 44th Street, Suite 520
> Phoenix, Arizona  85018
> Tel:   (480) 315-9980     Fax:   (480) 315-9984

Requests for reasonable accommodation for persons with disabilities must be made to the division assigned to the case by the party needing accommodation or his/her counsel at least three (3) judicial days in advance of a scheduled proceeding. Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

SEALED & DATED: _____.

MICHAEL JEANES, CLERK

MAY 3 2017

MICHAEL K. JEANES, CLERK
B COLWELL
DEPUTY CLERK

By:_____
Deputy Clerk

T1632744.DOCX.1

2

# EXHIBIT 3

COPY

MAY  3 2017

MICHAEL K. JEANES, CLERK
B  CULWELL
DEPUTY CLERK

Michael N. Poli (State Bar No. 006431)
MPoli@merlinlawgroup.com
Kesha A. Hodge (State Bar No. 021824)
KHodge@merlinlawgroup.com
MERLIN LAW GROUP, P.A.
2999 North 44th Street, Suite 520
Phoenix, Arizona 85018
Telephone:    (480) 315-9980
Facsimile:    (480) 315-9984
*Attorneys for Plaintiff*

## ARIZONA SUPERIOR COURT

## MARICOPA COUNTY    CV2017-006038

| | |
|---|---|
| MANIOS PROPERTIES, LLC, a California limited liability company, | Case No.: |
| Plaintiff, | **COMPLAINT** |
| v. | **(Breach of Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, Tortious Bad Faith)** |
| RIVERPORT INSURANCE COMPANY OF CALIFORNIA, an Iowa corporation, | **(Commercial Court Assignment Requested)** |
| Defendant. | <u>**JURY TRIAL DEMANDED**</u> |

For its Complaint, Plaintiff Manios Properties, LLC hereby alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1.    Plaintiff Manios Properties, LLC ("Manios Properties") is a California limited liability corporation.

2.    Defendant Riverport Insurance Company of California ("Riverport") is an Iowa corporation conducting business, including insurance transactions, in the State of Arizona. Upon information and belief, Riverport is authorized by the Arizona Department of Insurance to issue and sell property and casualty insurance in the State of Arizona.

T1613322.DOCX.1

1      3.      This lawsuit involves property insurance coverage for certain real property situated

2  in Maricopa County, Arizona.

3      4.      Subject matter jurisdiction is proper pursuant to Arizona Constitution, article six,

4  section fourteen and Arizona Revised Statutes ("A.R.S.") section 12-123.

5      5.      The amount in controversy exceeds the minimum jurisdictional limit of this Court.

6      6.      Pursuant to A.R.S. § 12-401, venue is proper in this Court.

7      7.      Manios Properties respectfully demand a trial by jury on all issues so triable.

8                           **FACTUAL ALLEGATIONS**

9      8.      Manios Properties owns the real property located at 10201, 10209, 10215, 10231

10  and 10237 N. 35th Avenue, Phoenix, Arizona 85051-9561 (the "Property").

11      9.      The Property consists of several commercial buildings as shown below.



10.     Riverport and/or its affiliate issued an insurance policy to Manios Properties covering the Property, which was identified as Location #2, with a policy period beginning August 30, 2015 and ending on August 30, 2016.  The policy of insurance is identified as policy number 2778502 (the "Policy").  A certified copy of the Policy is attached hereto as **Exhibit A**.

11.     Under the Policy, Riverport agreed to "insure [Manios Properties] against financial loss resulting from direct physical loss of or damage to covered property . . . ."

12.     Between October 18, 2015 and October 25, 2015, a storm struck and damaged the Property.  The storm included hail, high winds and rain.

13.     Reported hail maps indicate that some of the hail that fell between October 18, 2015 and October 25, 2015 near the Property was one inch or greater in size.

14.     On or about December 30, 2015, Manios Properties submitted a Notice of Claim ("the Claim") to Riverport.  The Claim was assigned as Claim No. 2778502-02 and sent to Deans & Homer, the managing underwriter for Riverport, to investigate.

15.     On or about June 15, 2016, Riverport sent a letter to Manios Properties denying coverage for the Claim.

16.     In its June 15, 2016 letter, Riverport stated, in pertinent part:

The purpose of this letter is to advise you that investigation has been completed on this claim and leads us to conclude that the loss occurred prior to the inception of very first Riverport policy issued effective August 30, 20 [sic] 2012 to August 30, 2013 for this property and thus is not covered.

To recap, on December 30, 2015, we received notice of a hail claim at 10201 N. 35th Avenue, Phoenix, AZ, (Location #1 in the Policy) from your insurance broker Brown & Brown Insurance of Arizona with a reported October 25, 2015 date of loss.

*     *     *

The roof and HVAC units reflected hail hits that were over 1" in size with similar damage to the HVAC units.

*     *     *

Research of the National Weather Service hail history showed that the buildings were in the path of the October 5, 2010 hail storm.  Also an independent report from Core Logics verified the size of the October 15, 2015 hail damage which was

3

reported as the date of loss. The 2015 hail was 0.8". The damage here is thus not consistent with the damage from the October 15, 2015 hail storm and other losses to roofs from the October 2015 storm but rather consistent with the 1.5" hail reported in 2010 which in essence resulted in what would have been a total loss given the nature of the damages and any required fix to the roof and HVAC units.

\* \* \*

As detailed above, investigation evidences that the damage here is not consistent with damage from hail from the October 25, 2015 hail storm but rather damage from a hail storm occurring on October 5, 2010 based on the size of the hail. As such the loss did not result from an accident which occurred during the policy period for which Riverport issued a policy to the insured. Riverport thus denies coverage for this loss.

17.     On or about August 9, 2016, Manios Properties retained Skipton and Associates, Inc. d/b/a Skipton Claims Management, a public adjusting firm, ("SAI") to assist with the Claim.

18.     On or about August 10, 2016, SAI sent a letter to Deans & Homer informing Riverport that Manios Properties had retained its services and requesting, among other things, that Riverport produce a true and complete certified copy of the Policy.

19.     On or about September 2, 2016, SAI sent a letter to Riverport and Deans & Homer addressing the wrongful denial of coverage. The September 2, 2016 correspondence (including attachments) is attached hereto as **Exhibit B**.

20.     In its September 2, 2016 letter, SAI explained:

Unless Riverport can produce their underwriter's inspection report showing that these roofs had prior damage, Riverport is obligated to provide coverage for this loss event. The courts in Arizona are quite clear on the obligations of an insurance company to provide coverage when they take premium payments from an insured and then try to blame prior conditions. If Riverport issued a policy of insurance on this property on August 30, 2012, they have legally assumed all risks of loss at the time of placement. This issue was discussed in an Insurance case over windstorm damages. While that case involved windstorm, the principle elements of coverage and the intent to limit recoveries based upon allegations of "prior conditions" was clearly addressed by the court.

In *Koory v. Western Cas. & Sur. Co.*, 153 Ariz. 412, 737 P2d 388, the court found as follows:

"The plain language of Koory's policy requires neither that the wind be the sole cause of loss, nor that the insured building be in "reasonable condition". **Koory purchased insurance for his warehouse, presumably in its then-present condition, against "all direct loss caused by . . . windstorm."** . . . Koory's insurance policy does not limit windstorm coverage to damage to buildings in objectively reasonable condition or to damages caused solely

1625134.DOCX.1

by the wind. If the damage to Koory's warehouse was caused by a windstorm, **Koory may recover under his policy even if other factors contributed** to his loss." (Bold emphasis added)

While Riverport might contend that these damages are the result of a storm that pre-dated their policy, they have the burden of proving that these damages were pre-existing. Conjecture is not proof of prior damages. Absent an underwriting report with photographs documenting prior damages, the task of providing adequate proof of their contention will be an up-hill battle. They will also need to explain why they issued an insurance policy to this insured with no restrictions for these prior damages. This is clearly a burden that Riverport cannot meet.

21. In its September 2, 2016 letter, SAI also explained:

Riverport's denial of coverage continues with their reliance on a hail map report from Core Logic. We attempted to verify Riverport's determination of the size of hail as reported by Core Logic and found no hail reports for either of the dates referenced in Riverport's denial of coverage. <u>We did however find multiple hail maps available for purchase with the hail size reported of 1" or more within your date range of October 15-25, 2015, with the most significant of those storms occurring on October 20, 2015.</u> We believe that this is the correct date of loss, as we have recently settled a hail storm claim on this date on the K Mart building roof just down the street from this insured premises. This building showed clear evidence of hail damages from hail stones in excess of one inch (1"). A screenshot of these maps has been attached for your review.

Additionally, we did some basic research on the size of hail as reported to have affected the Assured's property during the date range referenced in the denial letter. As you will see from the attached report and map from the National Oceanic and Atmospheric Administration, NOAA.gov, that hail of 1" was reported almost directly on the Assured's property. We also found a report from interactivehailmaps.com that reported "hail of 1.00 inches reported near 35th Ave and Peoria, which is the closest intersection to that of the Assured's property. Clearly, these additional hail maps lend credibility to the fact that this storm was likely larger than being characterized by Riverport Insurance.

Moreover, a critical review of the hail reporting website in which Riverport Insurance is relying upon, states that they do "not warrant that product descriptions or other content on this site is accurate, complete, reliable, current, or error-free. Thus leading us to believe that the characterization of the hail being too small to cause the damage to the Assured's property could not be as dispositive as Riverport would like us to believe.

With respect to Riverport's determination that "The roof and HVAC units reflected hail hits that were over 1" in size'" we believe this is an overestimation of size of the hail damages. While some hits may appear to be over an inch in size, there are many that were significantly smaller and caused just as much if not more damage than the few larger hits. Obviously, a hail storm does not necessarily produce consistently sized hailstones. Hailstones form in the atmosphere and fall to the ground in varying size and sometime lump configurations.

> We have attached several photos of the largest hits found on site and the surrounding much smaller hail damage. As you will see from the attached photo of the damages account for a size range of .5" to less than 1" in size.
>
> What is clear from the denials of coverage provided is that Riverport was not investigating this claim and looking to provide the coverage the Assured purchased and expected from Riverport. Rather Riverport seems to be on a quest to avoid payment of this claim through a biased and results oriented claim investigation. How else can one explain how Riverport missed the hailstorm maps that show 1" hail at this site during the period in question.

(Emphasis added.)

22.     In its September 2, 2016 letter, SAI requested that Riverport produce evidence to support Riverport's contention that the damage pre-dated the initiation of the Policy.

23.     In its September 2, 2016 letter, SAI also requested all documents utilized in the determination of coverage, including but not limited to the Core Logic Hail Report, the independent adjuster's investigation report, any of the underwriting documents showing the age and/or condition of the roof when Riverport began insuring the property, any and all applications and or inspections conducted in the placement of the insurance contract, and any subsequent field inspection reports in the possession of Riverport and/or its representatives.

24.     In its September 2, 2016 letter, SAI, on behalf of Manios Properties, requested that Riverport reconsider their position with respect to coverage for the Claim.

25.     On or about September 6, 2016, Deans & Homer responded to the September 2, 2016 correspondence stating, "Please note that Deans & Homer is an Underwriting Manager for Riverport Insurance Company. In this capacity, we are responsible for handling all aspects of this claim. In the future, please direct all correspondence to us. It is not necessary to send copies of the correspondence directly to Riverport. They forward it to us upon receipt."

26.     On or about October 20, 2016, SAI submitted Manios' Properties' claim for loss and damage to the Property.  Specifically, SAI submitted a building loss evaluation, which was prepared using Xactimate estimating software, totaling $217,984.22 in replacement cost value and $191,553.94 in actual cash value.

27.    Xactimate is the industry-accepted estimating system for insurance property losses and is routinely used by insurers, loss adjusters, restoration and reconstruction contractors, and specialized service providers to estimate repair costs.

28.    On or about November 11, 2016, after not receiving a substantive response, SAI sent a follow up letter to Deans & Homer.  The letter was resent on November 18, 2016 to reflect the correct date.  The November 11, 2016 letter is attached hereto as **Exhibit C**.

29.    In the November 11, 2016 letter, SAI explained:

> On September 2, 2016, we sent a detailed explanation of the Assured's position with regard to the coverage denial along with multiple requests for documents for which we have not received. This communication was sent nearly 3 months ago yet Riverport and their representatives have never responded. In addition, on October 20, 2016, nearly a month ago, we submitted the Assured's claim for hail related damages along with a request for payment which has also gone completely ignored. Clearly, Riverport's failure to respond to the Assured's requests for documents and their refusal to address the ongoing coverage matter does not meet the requirements as specified above.

30.    In its November 11, 2016 letter, SAI also reiterated its request for the documents utilized by Riverport in its determination of coverage.

31.    On or about November 21, 2016, Deans & Homer, in an email, acknowledged receipt of the letter and stated, "I was out of the office Friday afternoon but received your email. I have forwarded it to our Home office claims department for discussion. I know we are all going to be in and out during the short week, so we hope to respond to you by early next week. Thanks for your consideration and hope your holiday is enjoyable."

32.    As of the date of filing this Complaint, Manios Properties and/or SAI has not received a substantive response to its request for reconsideration and the requests for the information relied on by Riverport in making its denial.

## COUNT ONE

### (Breach of Insurance Contract)

33.    Manios Properties incorporates the foregoing allegations by this reference.

34.     Riverport agreed to insure Manios Properties under the Policy, and in connection therewith, Riverport undertook indemnity obligations to Manios Properties.

35.     Riverport received premiums from Manios Properties in exchange for its indemnity obligations under the Policy.

36.     The Policy, like all agreements in the State of Arizona, contains an implied covenant of good faith and fair dealing.

37.     Manios Properties fulfilled its obligations under the Policy.

38.     By wrongfully failing to process and pay the claim, Riverport breached its insurance contract with Manios Properties, including the implied covenant of good faith and fair dealing in that insurance contract, thereby depriving Manios Properties of the benefits it was to have received under that insurance contract.

39.     Riverport failed to perform its obligations under the insurance contract.

40.     Riverport failed to conduct an adequate and timely investigation of the loss and it failed to make payments owed under the Policy.

41.     Riverport breached its contractual obligations to Manios Properties

42.     Riverport breached the contract for insurance, including the implied covenant of good faith and fair dealing, thereby giving rise to damages.

43.     As a direct and proximate result of the conduct by Riverport, Manios Properties sustained reasonably foreseeable damages in an amount to be proven at trial.

44.     Manios Properties is also entitled to an award of attorneys' fees and costs under A.R.S. § 12-341.01.

## COUNT TWO

### (Bad Faith)

45.     Manios Properties incorporates the foregoing allegations by this reference.

46.     Arizona courts have explicitly held that an "insurance contract is not an ordinary commercial bargain; 'implicit in the contract and the relationship is the insurer's obligation to

play fairly with its insured.'" *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 196 Ariz. 234, 237, 995 P.2d 276, 279 (2000) (quoting *Rawlings v. Apodaca*, 151 Ariz. 149, 154, 726 P.2d 565, 570 (1986)). An "insurer has 'some duties of a fiduciary nature,' including '[e]qual consideration, fairness and honesty.'" *Id.*

47. Furthermore, "[t]he carrier has an obligation to immediately conduct an adequate investigation, act reasonably in evaluating the claim, and act promptly in paying a legitimate claim. It should do nothing that jeopardizes the insured's security under the policy. It should not force an insured to go through needless adversarial hoops to achieve its rights under the policy. It cannot lowball claims or delay claims hoping that the insured will settle for less. Equal consideration of the insured requires more than that." *Zilisch*, 196 Ariz. at 238, 995 P.2d at 280.

48. In all aspects of investigating or evaluating a claim, an insurance carrier is required to give as much consideration to policyholder's interests as it does to its own interests.

49. Arizona law provides that "the insured is entitled to expect that the insurer will be 'on his side' at least to the extent of treating him honestly and fairly. . . ." *Rawlings*, 151 Ariz. 149, 155, 726 P.2d 565, 571 (1986)

50. Under Arizona law, "An insurance company must conduct an 'adequate investigation' into an insured's claim for benefits." *American Family Mut. Ins. v. Grant*, 222 Ariz. 507, 512, 217 P.3d 1212, 1217 (App. 2009).

51. "Indifference to facts or failure to investigate are sufficient to establish the tort of bad faith." *Rawlings*, 151 Ariz. at 162, 726 P.2d at 578; *Nardelli v. Metropolitan Group Property & Cas. Ins. Co.*, 230 Ariz. 592, 604, 277 P.3d 789, 801 (App. 2012).

52. "An insurance company's failure to adequately investigate . . . becomes material when a further investigation would have disclosed relevant facts." *Aetna Cas. & Sur. Co. v. Superior Court in and for County of Maricopa*, 161 Ariz. 437, 440, 778 P.2d 1333, 1336 (App. 1989).

53.     The Unfair Claims Settlement Practices Act, as codified in A.R.S. and the Arizona Administrative Code, among other things, requires that, "An appropriate reply shall be made within 10 working days on all other pertinent communications from a claimant which reasonable suggest that a response is expected."   *See* A.A.C. R20-6-801(E)(3).

54.     Riverport did not substantively respond to or communicate with Manios Properties and/or SAI within ten working days to the September 2, 2016, October 20, 2016 or November 11, 2016 letters.  Riverport also did not notify Manios Properties and/or SAI as to whether it needed more time to make the determination and/or outline the reasons more time was needed.

55.     "When recovery is sought under an insurance contract, the insured has the burden of proving that his loss was due to an insured risk.  In order to establish a prima facie case, [the insured] must prove the insurance policy, the happening of the insured event, and the giving of notice as provided in the policy.  The insurer, on the other hand, has the burden of showing that the loss was within a policy exclusion." *Pacific Indem. Co. v. Kohlhase*, 9 Ariz. App. 595, 597, 455 P.2d 277, 279 (1969).

56.     Manios Properties established a prima facie case for recovery under the Policy.

57.     Manios Properties' Claim is a covered loss under the Policy.

58.     Riverport did not present Manios Properties and/or SAI with any evidence to show that the Claim was excluded.

59.     Riverport did not present Manios Properties and/or SAI with any evidence that the Property sustained damage prior to the inception of the Policy that was excluded under the Policy.

60.     Pursuant to the terms of the Policy, Riverport was obligated to pay Manios Properties for the loss associated with and arising from the storm.

61.     Pursuant to the Policy and Arizona common law, Riverport owes and continues to owe a duty of good faith and fair dealing to Manios Properties.  Riverport breached its duty of good faith and fair dealing to Manios Properties, both substantively and by bad faith claims handling.

62.     Riverport failed to conduct an adequate and timely investigation of the loss and of Manios Properties' Claim.

63.     Riverport failed to process the claim in a proper manner.

64.     Without any reasonable justification for doing so, Riverport has failed to make payments owed to Manios Properties under the Policy for the loss, by committing improper acts.

65.     As a direct and proximate result of the acts and omissions of Riverport, Manios Properties has suffered both contract damages and extra-contractual / consequential damages.

66.     Manios Properties is entitled to an appropriate award of punitive damages.

67.     Manios Properties is also entitled to an award of its attorneys' fees under A.R.S. § 12-341.01.

WHEREFORE, on this claim, Plaintiff Manios Properties, LLC requests judgment against Defendant Riverport Insurance Company of California as follows:

A.     For compensatory damages in a just and reasonable amount (including both contractual damages and extra-contractual or consequential damages);

B.     For exemplary or punitive damages in a just and reasonable amount;

C.     For attorneys' fees and costs;

D.     For pre- and post-judgment interest;

E.     For taxable costs pursuant to A.R.S. § 12-341; and

F.     For such other and further relief as the Court deems just and proper.

DATED this 3rd day of May 2017.

MERLIN LAW GROUP, P.A.

By_____

Michael N. Poli
Kesha A. Hodge
2999 North 44th Street, Suite 520
Phoenix, Arizona 85018
*Attorneys for Plaintiff*

TIA25141.DOCX.1

11

# Exhibit A

Policy No.
2778502

Policy No.
2778502

DEANS AND HOMER, Insurance Managing Underwriters, 340 Pine Street, San Francisco 94104

NAMED INSURED:                           PRODUCER Tel:(602)277-6672
  Manios Properties, LLC                 Brown & Brown Insurance of Arizona,
  C/O Eagle Commercial Realty Service    Inc.
  2929 North 44th Street                 2800 N. Central Ave.
  Suite #345                             Suite 1600
  Phoenix, AZ 85018-7238                 Phoenix, AZ 85004-1047

# THIS DOCUMENT AND ALL ATTACHMENTS

## CONSTITUTE YOUR POLICY

### DEANS & HOMER

BY: _____
      William Deane

DH-COVER (05-J1)

Policy No.
2778502

Policy No.
2778502
COPY
Direct Bill

Policy Period
  From:  8/30/2015
    To:  8/30/2016
At 12:01 A.M.
Standard Time

DEANS & HOMER, INSURANCE MANAGING UNDERWRITER
340 Pine St 2nd Floor, San Francisco, CA 94104

NAMED INSURED:
  Manios Properties, LLC
  C/O Eagle Commercial Realty Service
  2929 North 44th Street
  Suite #345
  Phoenix, AZ 85018-7238

PRODUCER Tel:(602)277-6672
  Brown & Brown Insurance of Arizona,
  Inc.
  2800 N. Central Ave.
  Suite 1600
  Phoenix, AZ 85004-1047

TERM PREMIUM:                          $10,057.00

LOCATION #1
10201 N 35TH AVE
PHOENIX, AZ 85051-9561

Coverage and conditions applicable to location #1

PREMIER BUILDING OWNERS PACKAGE POLICY

| COVERAGE | LIMIT OF INSURANCE |
|---|---|
| SECTION I - Structures and Rents | |
| Limit of Insurance for Structures | $582,000 |
| Increased Replacement Cost Limits Endorsement | ATTACHED |
| Changes structures limit to 125% of the amount shown when structures are repaired or replaced. | |
| Green and Sustainable Building Coverage | $10,000 |
| Rents | NOT COVERED |
| | |
| SECTION II - Business Liability | |
| Business Liability: Per Occurrence Limit | See Limits Table |
| Annual Aggregate Limit | See Limits Table |
| Non-Owned Auto Liability | COVERED |
| Premises Medical Payments Limit - Each Person: | See Limits Table |
| Each Accident: | See Limits Table |

DEDUCTIBLE
  Deductible Amount:      $5,000

FORMS
  DH 03-76 (07-11) Arizona Amendatory Endorsement
  DH 05-51 (02-15) Limited Coverage for Terrorism

2778502          Page-   2                                    2778502

```
DH 21-00 (04-08) Premier Building Owner's Package
DH 21-05 (04-08) Increased Replacement Cost Limits
DH 21-07 (04-08) Green Building Endorsement
DH 21-08 (04-08) Exclusion: Business Pers Property
DH 21-09 (04-08) Loss of Rents Coverage Deleted
DH 21-17 (04-08) Entity Not Insured
```

SPECIAL PROVISIONS


Additional Exclusion - ENTITY NOT INSURED

    1. ACCEL
       Michaels Garden

DECLARED VALUES (Premium Basis)
    Structures    $582,000

LOCATION PREMIUM:               $2,038.00


LOCATION #2
10209 N 35TH AVE
PHOENIX, AZ 85051-9589

Coverage and conditions applicable to location #2


PREMIER BUILDING OWNERS PACKAGE POLICY

| COVERAGE | LIMIT OF INSURANCE |
|---|---|
| SECTION I - Structures and Rents | |
| Limit of Insurance for Structures | $591,000 |
| Increased Replacement Cost Limits Endorsement | ATTACHED |
| Changes structures limit to 125% of the amount shown when structures are repaired or replaced. | |
| Green and Sustainable Building Coverage | $10,000 |
| Rents | Actual Loss Sustained |
| SECTION II - Business Liability | |
| Business Liability: Per Occurrence Limit | See Limits Table |
| Annual Aggregate Limit | See Limits Table |
| Non-Owned Auto Liability | COVERED |
| Premises Medical Payments Limit - Each Person: | See Limits Table |
| Each Accident: | See Limits Table |

DEDUCTIBLE
    Deductible Amount:       $5,000


FORMS
```
DH 03-76 (07-11) Arizona Amendatory Endorsement
DH 05-51 (02-15) Limited Coverage for Terrorism
```

2778502            Page-   3                                2778502

                DH 21-00 (04-08) Premier Building Owner's Package
                DH 21-05 (04-08) Increased Replacement Cost Limits
                DH 21-07 (04-08) Green Building Endorsement

        DECLARED VALUES (Premium Basis)
                Structures     $591,000

    LOCATION PREMIUM:                   $1,499.00


    LOCATION #3
    10215 N 35TH AVE
    PHOENIX, AZ 85051-9580

    Coverage and conditions applicable to location #3


    PREMIER BUILDING OWNERS PACKAGE POLICY

        COVERAGE                                    LIMIT OF INSURANCE

            SECTION I - Structures and Rents
                Limit of Insurance for Structures              $531,000
                    Increased Replacement Cost Limits Endorsement   ATTACHED
                        Changes structures limit to 125% of the
                        amount shown when structures are repaired
                        or replaced.
                    Green and Sustainable Building Coverage     $10,000
                Rents                                        NOT COVERED

            SECTION II - Business Liability
                Business Liability: Per Occurrence Limit    See Limits Table
                                    Annual Aggregate Limit  See Limits Table
                Non-Owned Auto Liability                         COVERED
                Premises Medical Payments Limit - Each Person:  See Limits Table
                                        Each Accident:  See Limits Table

    DEDUCTIBLE
        Deductible Amount:       $5,000


    FORMS
            DH 03-76 (07-11) Arizona Amendatory Endorsement
            DH 05-51 (02-15) Limited Coverage for Terrorism
            DH 21-00 (04-08) Premier Building Owner's Package
            DH 21-05 (04-08) Increased Replacement Cost Limits
            DH 21-07 (04-08) Green Building Endorsement
            DH 21-08 (04-08) Exclusion: Business Pers Property
            DH 21-09 (04-08) Loss of Rents Coverage Deleted
            DH 21-17 (04-08) Entity Not Insured

    SPECIAL PROVISIONS


    Additional Exclusion - ENTITY NOT INSURED

2778502             Page-   4                              2778502

        1. ACCEL
           Michaels Garden

    DECLARED VALUES (Premium Basis)
           Structures    $531,000

  LOCATION PREMIUM:                $1,815.00


  LOCATION #4
  10231 N 35TH AVE
  PHOENIX, AZ 85051-9584

  Coverage and conditions applicable to location #4


  PREMIER BUILDING OWNERS PACKAGE POLICY

    COVERAGE                                    LIMIT OF INSURANCE

        SECTION I - Structures and Rents
           Limit of Insurance for Structures          $405,000
           Increased Replacement Cost Limits Endorsement   ATTACHED
              Changes structures limit to 125% of the
              amount shown when structures are repaired
              or replaced.
           Green and Sustainable Building Coverage      $10,000
           Rents                                     NOT COVERED

        SECTION II - Business Liability
           Business Liability: Per Occurrence Limit   See Limits Table
                               Annual Aggregate Limit  See Limits Table
           Non-Owned Auto Liability                        COVERED
           Premises Medical Payments Limit - Each Person:  See Limits Table
                                Each Accident:  See Limits Table

  DEDUCTIBLE
     Deductible Amount:        $5,000


  FORMS
        DH 03-76 (07-11) Arizona Amendatory Endorsement
        DH 05-51 (02-15) Limited Coverage for Terrorism
        DH 21-00 (04-08) Premier Building Owner's Package
        DH 21-05 (04-08) Increased Replacement Cost Limits
        DH 21-07 (04-08) Green Building Endorsement
        DH 21-08 (04-08) Exclusion: Business Pers Property
        DH 21-09 (04-08) Loss of Rents Coverage Deleted
        DH 21-17 (04-08) Entity Not Insured

  SPECIAL PROVISIONS


  Additional Exclusion - ENTITY NOT INSURED

2778502          Page-   5                              2778502


        1. BISTA
           ACCEL

      DECLARED VALUES (Premium Basis)
           Structures     $405,000

   LOCATION PREMIUM:              $1,372.00


   LOCATION #5
   10237 N 35TH AVE
   PHOENIX, AZ 85051-9572

   Coverage and conditions applicable to location #5


   PREMIER BUILDING OWNERS PACKAGE POLICY

      COVERAGE                                    LIMIT OF INSURANCE

          SECTION I – Structures and Rents
             Limit of Insurance for Structures              $852,000
                Increased Replacement Cost Limits Endorsement    ATTACHED
                   Changes structures limit to 125% of the
                   amount shown when structures are repaired
                   or replaced.
                Green and Sustainable Building Coverage       $10,000
             Rents                                        NOT COVERED

          SECTION II – Business Liability
             Business Liability: Per Occurrence Limit     See Limits Table
                              Annual Aggregate Limit      See Limits Table
             Non-Owned Auto Liability                          COVERED
             Premises Medical Payments Limit – Each Person:  See Limits Table
                                      Each Accident:  See Limits Table


   DEDUCTIBLE
      Deductible Amount:        $5,000


   FORMS
          DH 03-76 (07-11) Arizona Amendatory Endorsement
          DH 05-51 (02-15) Limited Coverage for Terrorism
          DH 21-00 (04-08) Premier Building Owner's Package
          DH 21-05 (04-08) Increased Replacement Cost Limits
          DH 21-07 (04-08) Green Building Endorsement
          DH 21-09 (04-08) Loss of Rents Coverage Deleted

      DECLARED VALUES (Premium Basis)
           Structures     $852,000

   LOCATION PREMIUM:              $3,333.00

2778502          Page-    6                              2778502

# LIMITS TABLE

PREMIER BUILDING OWNERS PACKAGE POLICY

SECTION II - Business Liability
Business Liability: Per Occurrence Limit          $1,000,000
                       Annual Aggregate Limit     $3,000,000
Premises Medical Payments Limit - Each Person:    $ 1,000
                          Each Accident:          $25,000

By: Richard D. Pineda, CPCU, ARM Copy (#13)

2778502    RIVERPORT INSURANCE COMPANY OF CALIFORNIA

# ARIZONA AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by this policy.

It is agreed that the CANCELLATION AND NON-RENEWAL section is deleted and replaced as follows:

## CANCELLATION AND NON-RENEWAL

CANCELLATION:

1. You may cancel this policy at any time by returning it to us or by notifying us in writing of the date cancellation it to take effect.

2. We may cancel this policy for non-payment of premium by giving you fifteen (15) days of written notice.

3. If you or we cancel this policy, we will also mail the notice of cancellation to each mortgagee or other person or entity shown on this policy. We will state the reason for cancellation on the written notice. Any pro-rata premium due you will be refunded within a reasonable time after the cancellation takes effect.

NON-RENEWAL:

1. We may non-renew this policy for any reason by giving you at least forty-five (45) days written notice to be effective at the next expiration date of the policy whichever is first.

2. If we non-renew this policy, we will also mail the notice of non-renewal to each mortgagee or other person or entity shown on this policy. We will state the reason for non-renewal on the written notice. Any pro-rata premium due you will be refunded within a reasonable time after the cancellation takes effect.

RENEWAL CONDITIONS
1. If we elect to renew this policy and the renewal is subject to any of the following:
   a. increase in premium;
   b. change in deductible;
   c. reduction in limits of insurance; or
   d. substantial reduction in coverage;
   we will mail or deliver written notice of the change(s) to you, at the last mailing address known to us, at least thirty (30) days before the anniversary or expiration date of the policy.

2. If renewal is subject to any condition described in paragraph 1. above, and we fail to provide notice thirty (30) days before the anniversary or expiration date of this policy, the following procedures apply:

   a. The present policy will remain in effect until the earlier of the following:
      (1) thirty (30)) days after the date of mailing or delivery of the notice; or
      (2) the effective date of replacement coverage obtained by you.

   b. If you elect not to renew, any earned premium for the period of extension of the terminated policy will be calculated pro rata at the lower of the following rates:
      (1) the rates applicable to the terminated policy; or
      (2) the rates presently in effect.

   c. If you accept the renewal, the premium increase, if any, and other changes are effective the day following this policy's anniversary or expiration date

All other policy terms, limitations, and conditions remain unchanged.

2778502    RIVERPORT INSURANCE COMPANY OF CALIFORNIA

## LIMITED COVERAGE ENDORSEMENT
## FOR CERTIFIED ACTS OF TERRORISM

This policy includes coverage for **Certified Acts of Terrorism**.

In consideration of the payment of premium and subject to all terms, conditions and limitations of the policy of which this endorsement is a part, **you** and **we** agree to the following:

Solely with respect to the insurance provided by this endorsement, the term exclusion as referred to herein means an exclusion to coverage under the Exclusions section of the policy, or a loss not covered under the Losses Not Covered section of the policy, as it may apply.

THE FOLLOWING DEFINITION IS ADDED TO THE POLICY.

> **Certified Act of Terrorism** means an "act of terrorism" as defined by The Terrorism Risk Insurance Act, as amended, in Section 102(1)(A) as follows:
>
> Section 102 (1)(A): "The term "act of terrorism" means any act that is certified by the Secretary of the Treasury-in consultation with the Secretary of Homeland Security and the Attorney General of the United States-to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion."

THE FOLLOWING LIMITATION OF COVERAGE IS ADDED TO THE POLICY:

> **Limitation of Coverage for Certified Acts of Terrorism**
>
> If aggregate insured losses attributable to one or more **Certified Acts of Terrorism** exceed $100 billion in any one calendar year (January 1 through December 31) and **we** have met **our** insurer deductible under the Terrorism Risk Insurance Act, as amended, **we** shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion in a Calendar Year, except for loss or damage caused by fire as a result of a **Certified Act of Terrorism. We** will pay for the loss or damage caused by that fire subject to the following:
>
>  1. All applicable policy provisions apply to this coverage for fire exception including the Limit of Insurance on the affected property.
>  2. Coverage for fire applies only to direct loss or damage caused by that fire to covered property.
>  3. Coverage for fire exception does not apply to business income, extra expense or liability coverage, if such coverage is otherwise provided under the policy.
>
> Insured losses up to $100 billion in a Program Year are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

APPLICATION OF POLICY LIMITATIONS AND EXCLUSIONS:

> Exclusions and limitations in the policy apply to **Certified Acts of Terrorism** coverage:
>
> The terms and limitations of any **certified act of terrorism** exclusion, or the inapplicability or omission of a **certified act of terrorism** exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this policy, including but not limited to losses excluded by a nuclear exclusion or a war exclusion, as they may apply.

All other terms, conditions and limitations remain unchanged.

As of: 10/25

2778502    RIVERPORT INSURANCE COMPANY OF CALIFORNIA

# Premier Building Owner's Package Policy

## INTRODUCTION

Please read the entire policy.  See the Table of Contents for some of the more frequently referred to subjects.

Words in bold print, other than titles and headings, have the meaning given them in the DEFINITIONS section. Refer to the Table of Contents.

For the applicable limits of insurance refer to the Declarations Page and the **What We Cover** section of this policy.

## REPRESENTATIONS

By accepting this policy **you** agree that:

1.  the statements on the Declarations Page are accurate and complete.

2.  those statements are based upon representations **you** made to **us**.

3.  **we** have issued this policy in reliance upon **your** representations.

## CONCEALMENT, MISREPRESENTATION OR FRAUD

**We** will not pay for any loss or damage if **you** have, or any other insured has, whether before or after a loss, intentionally concealed or misrepresented any material fact or circumstance or made false statements or engaged in fraudulent conduct relating to this insurance.

## AGREEMENT

**We** will provide the insurance described in this policy in return for the premium and **your** compliance with all provisions of this policy, including endorsements.

# TABLE OF CONTENTS

SECTION I – BUSINESS PROPERTY AND RENTS.................................................4

  Limit of Insurance ...............................................................................................4

  What We Cover.....................................................................................................4

    Structures ..........................................................................................................4
    Employees' Property...........................................................................................4
    Tenants' Property ...............................................................................................4
    Lost Master Key..................................................................................................4
    Newly Acquired Structures..................................................................................4
    New Buildings under Construction .....................................................................5
    Property Used to Maintain Covered Structures .................................................5
    Trees, Shrubs and Plants ..................................................................................5
    Money .................................................................................................................5

  Losses Covered....................................................................................................5

    Ordinance ...........................................................................................................5
    Rents ..................................................................................................................6
    Contingent Loss of Rents ...................................................................................6

    Tenant Moving Costs ..........................................................................................6
    Rents for Newly Acquired Structures .................................................................7
    Debris Removal and Demolition .........................................................................7
    Equipment Breakdown ........................................................................................7
    Fire Department Service Charge ........................................................................8
    Fire Protection Systems......................................................................................8

  What We Do Not Cover ........................................................................................8

    Property Not Covered..........................................................................................8
    Losses Not Covered ...........................................................................................8

  Deductible(s) .......................................................................................................10

  Basis of Loss Payment ......................................................................................11

    Structures ..........................................................................................................11
    Your Business Personal Property and Property of Your Employees ................11
    Trees, Shrubs and Plants ................................................................................12
    Personal Property of Others, including Tenants................................................12
    Rents.................................................................................................................12
    Lost Master Key.................................................................................................13
    Tenant Moving Costs .........................................................................................13

  Your Duties Following a Loss ............................................................................13

SECTION II – BUSINESS LIABILITY ..................................................................18

  Premises Liability...............................................................................................18

    Coverage ...........................................................................................................18
    Exclusions .........................................................................................................18

## TABLE OF CONTENTS

**Personal Injury and Advertising Injury Liability** .................................................................**20**
    Coverage ...........................................................................................................20
    Exclusions ..........................................................................................................21

**Non-Owned Auto Liability** ...........................................................................................**22**
    Coverage ...........................................................................................................22
    Exclusions ..........................................................................................................23

**Hired Auto Liability** ..................................................................................................**24**
    Coverage ...........................................................................................................24
    Exclusions ..........................................................................................................24

**Premises Medical Payments** .......................................................................................**25**
    Coverage ...........................................................................................................25
    Exclusions ..........................................................................................................25

**Supplementary Payments** ..........................................................................................**26**

**Limits of Insurance** ..................................................................................................**27**

**Your Duties in the Event of an Occurrence, Act, Claim or Suit** ...........................................**28**

**COMMON POLICY CONDITIONS APPLYING TO SECTIONS I AND II** ......................................**30**

**DEFINITIONS** ..........................................................................................................**31**

## SECTION I – BUSINESS PROPERTY AND RENTS

### Limit of Insurance

1. All Covered Loss

   Regardless of the number of people insured under this policy, the most **we** will pay for any one loss is the applicable limit of insurance.

2. Loss of Rents

   Coverage for loss of rents is not subject to a dollar limit of insurance. It is limited to **your** actual and necessarily sustained net loss of rents for up to thirty (30) consecutive months following an **accident** causing covered loss or damage.

### What We Cover

1. Property covered at a location named on the Declarations Page, for the limits shown below:

   A. Structures

      Up to the limit shown on the Declarations Page for **your** structures, **your** business personal property used to maintain, service, repair or construct **your** structures and **your** business personal property furnished for use by **your** tenants.

   B. Employees' Property

      $25,000 for personal property of **your** employees not to exceed $1,000 for any one employee.

   C. Tenants' Property

      $25,000 for personal property of **your** tenants, not to exceed $1,000 for any one tenant, which is in **your** care, custody or control and for which **you** are legally liable.

   D. Lost Master Key

      $25,000 for keys and locks that must be replaced or adjusted because a master key or grand master key is lost or damaged by an **accident**.

2. Property covered at any location in the Continental United States of America or Canada, for the limits shown below:

   A. Newly Acquired Structures

      $1,000,000 for structures, other than structures in the course of construction, **you** acquire ownership of during the policy period, and which are not covered by other insurance.

      This coverage ceases ninety (90) days after the date **you** acquire the structures or at the expiration or cancellation date of this policy, whichever is first.

      An additional premium, computed by using the rates in effect for such structures at the date of acquisition, will be charged for the period of time **we** provide coverage.

## SECTION I – BUSINESS PROPERTY AND RENTS

B.  New Buildings under Construction

$1,000,000 for new buildings, including materials intended to become integral parts of these buildings, in the course of construction, and which are not covered by other insurance.

This coverage does not apply to additions to or alterations of existing structures.

This coverage ceases thirty (30) days after the first day on which any work is performed at the job site.

An additional premium, computed by using the rates in effect when construction begins, will be charged for the period of time we provide coverage.

C.  Property Used to Maintain Covered Structures

$25,000 in the aggregate for:

1) **your** covered business personal property; and

2) business personal property of others which is in **your** care, custody or control and for which **you** are legally liable; and

that is used to maintain, service, or repair covered structures.  This coverage does not apply to personal property belonging to **your** employees or tenants.

D.  Trees, Shrubs and Plants

$5,000 in the aggregate for **your** trees, shrubs and other plants not to exceed $1,000 for any one tree, shrub or other plant.

E.  Money

$5,000 in the aggregate for money, money orders, checks, travelers checks and stamps all used in connection with the ownership or management of covered structures.

## Losses Covered

Subject to the terms, conditions and limitations of this policy, **we** insure **you** against financial loss resulting from direct physical loss of or damage to covered property caused by an **accident,** including the following:

1.  At a location named on the Declarations Page for the limits shown below:

A.  Ordinance

1) $250,000 in the aggregate as an additional amount of insurance for all of the following unless a greater limit of insurance for Ordinance or Law is shown on the Declarations Page:

a) any increase in the cost to repair or replace a damaged or destroyed covered structure which results from the enforcement of any ordinance, law or code regulating the use, repair or construction of that structure; and

## SECTION I – BUSINESS PROPERTY AND RENTS

    b) any increase in the amount of loss of rents resulting from a delay caused by the enforcement of any ordinance, law or code regulating the use, repair or construction of the damaged or destroyed covered structure; but

**$2,500 is the most we will pay** because of the enforcement of any ordinance, law or code in effect at the time of the loss or damage which requires compliance even in the absence of damage to the structure.

    2) Financial loss of the undamaged portion of a damaged structure when the undamaged portion must be demolished as a result of the enforcement of any ordinance, law or code regulating the use, repair or construction. This coverage does not increase the limit of insurance shown on the Declarations Page for the damaged structure.

B. Rents

Up to 30 months loss of rents because of damage to or destruction of covered structures caused by an **accident**.

This coverage includes accrued rents which become uncollectible as a result of the **accident**; it also includes extra expenses incurred to reduce the loss of rents when the total resulting rents loss, including those extra expenses, is less than or equal to the loss of rents that would have been incurred without those extra expenses.

C. Contingent Loss of Rents

**$100,000 as an additional amount of insurance** for **your** loss of or reduction in rents resulting from an **accident** which causes direct physical loss of or damage to property not owned by **you** but which is situated anywhere within the state of a location described on the Declarations Page.

This additional coverage does not apply to loss of rents resulting from damage to or destruction of water, communication or power supply services.

D. Extraction of Pollutants

**$25,000 as an additional amount of insurance** for expenses necessarily incurred to extract **pollutants** from land or water at the location of a covered structure.

**We** will pay these expenses only if reported to **us** in writing within one hundred eighty (180) days of the date of the **accident**. This limit of insurance is the most **we** will pay for all such expense incurred in any one twelve (12) month policy period.

E. Tenant Moving Costs

**$25,000 as an additional amount of insurance** for expenses **you** incur to move **your** tenants, who have had to move out  temporarily because of covered damage to or destruction of  a covered structure, back into the covered structure.

The move back must take place within thirty (30) days after the portion of the structure rented by **your** tenant has been repaired or rebuilt and is ready for occupancy.

The move back need not take place prior to the expiration date of the policy.

## SECTION I – BUSINESS PROPERTY AND RENTS

2. At a location anywhere in the Continental United States or Canada for the additional limits shown below:

   A. Rents for Newly Acquired Structures

   $200,000 for loss of rents, but not accrued rents, for newly acquired structures described in **What We Cover**, 2. A.

   This coverage applies only if the **accident** causing damage to the structures occurs not more than ninety (90) days from the date **you** acquire ownership of the structures.

   B. Debris Removal and Demolition

   $500,000 for increases in otherwise covered loss incurred to remove debris of covered property including the expense necessarily incurred to demolish and remove the debris of any undamaged portion of the damaged covered structure where such increased expenses are incurred because:

   1) of the enforcement of any ordinance, law or code requiring that the undamaged portion of the damaged covered structure be demolished; or

   2) it is not economical to repair the damaged covered structure.

   C. Equipment Breakdown - Contamination

   $25,000 in the aggregate when an **equipment breakdown** of **covered equipment** causes covered property to become contaminated by a **hazardous substance** for the following:

   1) additional expense necessarily incurred to clean, repair or replace the contaminated covered property; or

   2) additional expense necessarily incurred to dispose of the contaminated covered property.

   **We** will also pay for resulting net loss of rents actually and necessarily incurred including extra expense incurred to prevent or minimize loss of rents. Such extra expenses are covered when the total resulting loss of rents including those extra expenses is less than or equal to the loss of rents that would have been incurred without those extra expenses.

   Additional expense means those expenses beyond what would have been required had no **hazardous substance** been involved.

   D. Equipment Breakdown - CFC Refrigerant Loss

   $25,000 when an **equipment breakdown** of **covered equipment** causes the loss of CFC (chlorinated fluorocarbon) refrigerants. **We** will pay for the additional expense necessarily incurred to repair or replace the **covered equipment** beyond what would have been necessary had no refrigerant containing CFC (chlorinated fluorocarbon) been involved.

   The amount **we** will pay is limited to the smallest of the following:

   1) the amount required to repair the damaged **covered equipment** and replace any lost CFC (chlorinated fluorocarbon) refrigerant; or

   2) the amount required to repair and retrofit the damaged **covered equipment** to accept non-CFC (chlorinated fluorocarbon) refrigerant and charge it with a non-CFC (chlorinated fluorocarbon) refrigerant; or

   3) the amount required to replace the **covered equipment** with **covered equipment** using a non-CFC (chlorinated fluorocarbon) refrigerant.

## SECTION I – BUSINESS PROPERTY AND RENTS

E. Fire Department Service Charge

$5,000 for fire department service charges you incur because the fire department is called and responds to save or protect covered property.

F. Fire Protection Systems

$5,000 in the aggregate for expenses actually and necessarily incurred:

1) to recharge your fire protection devices;

2) for which you are liable to the local water department for water discharged because of a fire by an automatic sprinkler system or fire hoses which are a permanent part of a covered structure.

## What We Do Not Cover

1. Property Not Covered

   **We** do not cover:

   A. Land and land values.

   B. Motor vehicles or trailers licensed for road use including their equipment.

   C. Watercraft.

   D. Aircraft.

   E. Animals.

   F. Fur, fur garments, watches, jewelry, precious and semi-precious stones and precious metals, including silver.

   G. Money, money orders, checks, travelers checks and stamps except as provided for in What We Cover, 2. E.

2. Losses Not Covered

   A. **We** do not insure **you** against loss of or damage to covered property resulting from or caused, directly or indirectly, proximately or remotely, by any of the following. Such loss or damage is not covered regardless of any **accident** that contributes concurrently or in any sequence to such loss or damage:

      1) Earth movement other than **sinkhole collapse**. Earth movement includes earthquake, volcanic eruption, landslide, mudflow, subsidence and earth sinking, rising or shifting.

         If fire, explosion or **volcanic action** ensues, **we** will be liable only for the ensuing direct loss or damage from the fire, explosion or **volcanic action**.

      2) Flood, overflow of any body of water, surface water, waves, tides, tidal waves or spray from any of them even if driven by wind; or

         a) water that backs up through or overflows from a sewer, drain or sump if such backup or overflow is caused by any of the causes of loss stated in 2) above; or

## SECTION I – BUSINESS PROPERTY AND RENTS

      b)  underground water including water which presses on, flows or seeps through foundations, walls or floors or paved surfaces, or into unpaved basements.

If fire or explosion ensues, we will be liable only for the ensuing direct loss or damage from the fire or explosion.

3)  Loss or damage resulting from insects, vermin or rodents.

If fire or explosion ensues, we will be liable only for the ensuing direct loss or damage from the fire or explosion.

4)  Theft by **you, your** employee(s) or, with the exception of carriers for hire, anyone to whom covered property is entrusted.

Ensuing loss by fire or explosion resulting from theft by **your** employee(s) or by anyone to whom covered property is entrusted is covered.

5)  Shortage disclosed on taking inventory or unexplained or mysterious disappearance of covered property.

Covered property in the custody of a carrier for hire is covered.

6)  Pollution caused by or resulting from the presence of or the release, discharge, escape, dispersal, seepage or migration of **pollutants**.

If the presence, release, discharge, escape, dispersal, seepage or migration is caused by or results from fire, lightning, explosion, windstorm, hail, aircraft, vehicles, riot or civil commotion, vandalism or malicious mischief, sprinkler leakage, falling objects, **volcanic action** or weight of snow, sleet or ice, **we** will pay for the resulting loss.

7)  Error in design, plans or specifications; faulty or defective workmanship or materials; latent or patent defect; or mechanical breakdown other than **equipment breakdown** to **covered equipment**.

If loss from fire, explosion, sprinkler leakage, falling objects, weight of snow, sleet or ice, or **accidental** discharge of water not otherwise excluded from a plumbing, heating or air conditioning system which has cracked or broken apart ensues, we will pay for the ensuing loss. **We** will not, however, pay for the cost to correct the condition which causes such ensuing loss.

8)  War, including undeclared or civil war; warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## SECTION I – BUSINESS PROPERTY AND RENTS

9) Nuclear reaction or radiation, or radioactive contamination, however caused.

   If nuclear reaction or radiation, or radioactive contamination results in fire, **we** will pay for the loss or damage caused by that fire.

B. In addition, **we** do not insure **you** against any of the following losses, however caused:

1) Delay, loss of use, loss of market, loss of business income or other consequential loss

   This exclusion does not apply to loss of rents including accrued rents and extra expense provided for elsewhere in this policy.

2) Wear and tear, deterioration, rust, **organic pathogens**, mold, wet or dry rot.

   If fire, explosion or damage from water not otherwise excluded ensues, **we** will be liable only for the ensuing loss or damage from the fire, explosion or water not otherwise excluded.

   If **equipment breakdown** to **covered equipment** ensues, **we** will pay for the loss or damage caused by that **equipment breakdown** to the **covered equipment**.

3) Settling, cracking, shrinking, bulging or expanding of covered structures.

   If fire, explosion or breakage of glass constituting an integral part of the structure ensues, **we** will be liable only for the ensuing loss or damage from the fire, explosion or breakage of such glass.

   If **equipment breakdown** to **covered equipment** ensues, **we** will pay for the loss or damage caused by that **equipment breakdown** to the **covered equipment**.

4) Except as provided for in <u>Losses Covered</u>, 1.A. and 2.B. of this policy, **we** will not pay for any of the following:

   a) any increase in the cost to repair or construct a replacement of a damaged or destroyed covered structure which results from the enforcement of any ordinance, law or code regulating the use, repair or construction of that structure;

   b) the cost or expense, including the cost or expense of debris removal, of demolishing any undamaged portion of any damaged covered structure whether or not required by any ordinance, law or code;

   c) any increase in the amount of loss of rents resulting from the enforcement of any ordinance, law or code that results in a delay of the time required to repair or replace the damaged or destroyed covered structure beyond the time that would be required in the absence of such enforcement of any ordinance, law or code.

## <u>Deductible(s)</u>

The applicable deductible amount shown on the Declarations Page will be deducted from the amount of any loss before applying any limits of insurance contained in the policy.

## SECTION I – BUSINESS PROPERTY AND RENTS

### Basis of Loss Payment

Subject to the provisions contained in the **Limit of Insurance** section, and to all other terms and conditions of this policy, when **you** have suffered a covered loss, the amount **we** will pay is calculated as follows:

1. Structures

   A. If **you** repair a damaged structure or replace a totally destroyed structure at the place of the loss and within a reasonable time, **we** will pay the amount actually and necessarily expended to repair the damaged structure or replace the totally destroyed structure with a new structure of like kind, quality and use; or

   B. If **you** replace a totally destroyed structure by building a new structure elsewhere, **we** will pay the amount actually and necessarily expended to replace elsewhere within a reasonable time after the loss with a new structure of like kind, quality and use. In no event, however, shall payment under this option exceed what would have been payable had option A. above been elected; or

   C. If **you** replace a totally destroyed structure by purchasing an existing structure elsewhere, **we** will pay the amount reasonably required and actually expended to purchase within a reasonable time after the loss a structure of like kind, quality and use as the structure totally destroyed. In no event, however, shall payment under this option exceed what would have been payable had option A. above been elected; or

   D. If **you** do not repair or replace a damaged or totally destroyed structure, **we** will pay **you** the lesser of the loss of actual cash value at the time and place of loss, with due consideration for depreciation from all sources however caused, or what it would cost to repair or replace with material of like kind, quality and use at the time and place of loss.

   **You** may first make claim for the loss of actual cash value under this paragraph, and, within one (1) year from the payment of that loss, make claim for any additional amount then payable by reason of paragraphs 1.A., 1.B., or 1.C. above.

   Certified Green Buildings: If the damaged or totally destroyed structure was certified as a Green Building, prior to the date of loss, by either the U.S. Green Building Council under their LEED® Green Building Rating System™, the Green Building Initiative's Green Globes™ rating system, or the U.S. Environmental Protection Agency's Energy Star® Partner registry system, **we** will pay the amount actually and necessarily expended to repair the damaged structure or replace the totally destroyed structure with property that meets current standards for continued certification at the highest level of certification awarded to the structure prior to the loss.

   In no event will **we** pay for the value of land.

2. Your Business Personal Property and Property of Your Employees

   A. If lost or damaged business personal property is repaired or replaced, payment will be limited to the amount actually and necessarily expended to repair or to replace the property with new property of like kind, quality and use.

   B. If lost or damaged business personal property is not repaired or replaced, payment will be limited to the loss of actual cash value with due consideration for depreciation from all sources however caused.

   Payment will not exceed the amount which it would cost to repair or replace the lost or damaged property with property of like kind, quality and use.

## SECTION I – BUSINESS PROPERTY AND RENTS

**You** may first make claim for the loss under paragraph B. and, within one (1) year from the payment of that loss, make claim for any additional amount then payable by reason of A.

3.  Trees, Shrubs and Plants

    **We** will pay the amount actually and necessarily spent to replace and plant lost or damaged trees, shrubs and other plants or, if not replaced, the amount actually and necessarily spent for removal of debris of such property.

4.  Personal Property of Others, including Tenants

    **We** will pay the amount for which **you** are legally liable.

5.  Rents

    A.  **We** will pay **your** net loss of rental income. The amount **we** will pay is limited as follows:

    1.  if the damaged or totally destroyed property is not repaired or replaced, or if it is repaired or replaced at the same premises, **we** will pay for the time during which the property could be repaired or replaced at the same location with property of like kind, quality and use with the exercise of due diligence and dispatch.

    2.  if a covered structure is totally destroyed and is replaced elsewhere by the construction or purchase of another structure of like kind, quality and use, **we** will pay for the time required to replace the structure elsewhere, not to exceed the time specified in 1. above for the replacement of property at the same location.

    B.  **We** will pay rents accrued but rendered uncollectible by reason of a covered loss at a location described on the Declarations Page.

    C.  **We** will pay **your** extra expenses incurred to reduce the loss of rents when the total resulting rents loss, including those extra expenses, is less than or equal to the loss of rents that would have been incurred without those extra expenses.

    D.  **We** will also pay **your** net loss of rental income which continues beyond the time required to repair or replace the property at that same location for a period no greater than one hundred eighty (180) days if :

    1.  the damaged or totally destroyed property is actually replaced with property of like kind, quality and use; and

    2.  repair or replacement is accomplished with the exercise of due diligence and dispatch; and

    3.  **you** have exercised and continue to exercise due diligence to minimize the loss of rents.

    In no event will **we** pay for more than thirty (30) months of incurred net loss of rental income.

    The period of time **we** use to determine **your** loss of rents is not limited by the expiration date of the policy.

## SECTION I – BUSINESS PROPERTY AND RENTS

6. Lost Master Key

   **We** will pay for the cost:

   A. to replace keys; and
   B. to adjust locks to accept new keys; or, if required;
   C. for new locks including the cost of their installation.

7. Tenant Moving Costs

   **We** will pay for the following reasonable and necessary documented move back expenses actually incurred:

   A. packing, insuring and transporting **your** tenants' business personal property;
   B. re-establishing electric utility service less refunds for discontinued service;
   C. assembling and setting up **your** tenants' fixtures and equipment;
   D. unpacking and reshelving **your** tenants' stock and supplies.

## Your Duties Following a Loss

1. **You** must at **your** expense:

   A. give **us** written notice of any loss as soon as practicable.
   B. file with **us** a detailed sworn statement of loss within ninety (90) days after the loss unless this time is extended by **us** in writing, setting forth to the best of **your** knowledge and belief:

      1) the time and cause of loss.
      2) **your** interest and that of all others in the property involved.
      3) other policies of insurance that may cover the loss.
      4) changes in title or occupancy of the property during the term of this policy.
      5) specifications of any damaged structures, detailed estimates for repair of the damage and the amount **you** claim for the repair under this policy.
      6) the amount claimed for replacement of trees, shrubs and other plants or for the removal of debris of such property accompanied by all exhibits necessary to support that amount.
      7) an inventory of damaged, covered personal property and the amount **you** claim for that property under this policy accompanied by all exhibits necessary to support that amount.
      8) the amount claimed for rents including accrued rents and extra expenses accompanied by all exhibits necessary to support that amount.

   C. do all things and produce all documents reasonably required to establish values, loss and damage and coverage for the loss.

2. **You** must at **our** expense submit to examinations under oath by any person named by **us** and sign transcripts thereof.

## SECTION I – BUSINESS PROPERTY AND RENTS

### Appraisal

If **we** fail to agree with **you** on the amount of loss, either party may make a written demand on the other for an appraisal of the loss. Upon receipt of such a demand, each party has twenty (20) days to choose a competent appraiser. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, either of the parties may request that the umpire be chosen by a judge of a court of record in the state where the property is located. The appraisers will separately determine the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will constitute the amount of the loss. Each party will:

1. Pay its chosen appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, **we** still retain **our** right to dispute coverage. Further, all of the terms, conditions, and limitations of the policy still apply to **your** loss.

### Mandatory Arbitration

In case **we** fail to agree with **you** as to the meaning or effect of any provision of this policy, the disagreement shall be resolved by binding arbitration in accordance with the statutory rules and procedures of the state in which the property is located. Should an arbitration under the terms of this clause result in any of the following, **we** will reimburse **you** for expenses actually incurred by **you** with respect to the arbitration, including reasonable attorney's fees, in a sum to be determined by the arbitrator(s):

1. a finding of coverage for claimed loss or damage for which coverage is denied by **us**;

2. a finding that **you** are entitled to a loss payment in accordance with the express terms of this policy and exclusive of costs or attorney's fees in an amount that exceeds the amount of any offer made by **us** in writing to settle **your** claim at any time up to thirty (30) days prior to the commencement of the arbitration.

The provisions of this clause are mandatory and may be enforced by either **you** or **us**.

### Optional Claim Resolution

At **your** option, if **we** fail to agree with **you** as to the meaning or effect of any provision of this policy or as to the amount payable in accordance with the express terms of this policy, **you** may have both the amount of the loss and any coverage issues decided at the same time through a binding arbitration in lieu of an appraisal. If **you** elect to have **your** loss resolved through arbitration, **you** get the benefits of the Mandatory Arbitration provision as explained above, including possible reimbursement of **your** actually incurred expenses. All of the terms, conditions, and provisions of the Mandatory Arbitration provision apply to this Optional Claim Resolution provision.

### Company's Option

**We** may at **our** option take all, or any part, of the property for which a claim is being made at the agreed or appraised value, or to repair or replace the property with other property of like kind and

## SECTION I – BUSINESS PROPERTY AND RENTS

quality within a reasonable time, provided we give notice of our intention to do so within thirty (30) days after receipt of the required statement of loss.

## Time Limitation for Action

No suit, demand for arbitration or other action on this policy for the recovery of any claim shall be sustainable in any court or other forum unless all the requirements of this policy have been complied with and unless commenced within twelve (12) months after the inception of the loss.

## Property of Others

At our option we may adjust losses with the owner of the property. Any payment made by us will be limited to the owner's financial interest in the lost or damaged property and will satisfy your claim against us. If legal proceedings are taken to enforce a claim against you for any such loss or damage, we reserve the right to conduct and control the defense on your behalf. No action by us in such regard will increase our liability under this policy or increase the limits specified in this policy.

## Examination of Your Books and Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three (3) years after the cancellation or expiration of this policy whichever is first.

## When Loss is Payable

The amount for which we are liable will be payable within thirty (30) days after the required statement of loss is received and agreed to in writing by us or an arbitration award is received by us.

## Mortgagee Interest and Obligations

Loss will be payable to a mortgagee named on the Declarations Page subject to its mortgage interest in the covered property. As to that mortgage interest, this insurance will not be affected by any:

1.  act or neglect of the mortgagor or owner of the covered property.
2.  foreclosure or other proceeding or notice of sale relating to the covered property.
3.  change in title or ownership of the covered property.

In case the mortgagor or owner neglects to pay any premium due under this policy, the mortgagee must, on demand, pay that premium in order to keep coverage in force.

If you fail to render a statement of loss, a named mortgagee, upon notice, may do so within sixty (60) days thereafter. In that event, the mortgagee must comply with all provisions of this policy.

## SECTION I – BUSINESS PROPERTY AND RENTS

If **we** cancel this policy any named mortgagee will be notified in accordance with the cancellation provisions of this policy.

To the extent of any payment for loss under this policy which **we** make to any mortgagee and for which **we** claim we are not liable to the mortgagor or owner, **we** will be subrogated to all of the rights of the mortgagee under the mortgage. Or **we** may pay the whole mortgage debt including accrued interest in return for a full assignment and transfer of the mortgage and all other securities for that debt.

### Time of Loss

This policy applies only to losses resulting from **accidents** which occur during the policy period shown on the Declarations Page.

### Other Insurance

**We** will not pay a greater portion of any loss than the limit of insurance for the loss under this policy bears to the total of the limits of insurance for the loss under all policies which cover the loss or which would cover the loss but for the existence of this policy, except insurance written specifically to cover as excess over the limits of insurance that apply in this policy.

### Recovery from Third Parties

1. **You** may waive **your** rights of recovery against any party in writing before an **accident**

2. Within ninety (90) days after an **accident**, **you** may waive **your** rights of recovery against any party who at the time of the **accident** is:

   A. shown on the Declarations Page.

   B. **your** tenant.

   C. owned or controlled by **you** because of **your** financial investment in that party.

   D. owns or controls **you** because of financial investment in **you** by that party.

**We** may require an assignment of **your** rights of recovery against any other party for loss to the extent that payment for that loss is made by **us**.

### Salvage and Recovery

**You** are entitled to complete reimbursement for covered loss before **we** are entitled to any proceeds from any recovery from third parties or salvage recovery. If a recovery is realized, **you** must share recovery expenses **we** incur to the extent of each party's proportionate interest.

## SECTION I – BUSINESS PROPERTY AND RENTS

### No Benefit to Bailee

This insurance may not directly or indirectly benefit any carrier or other bailee.

### Additional Conditions

For additional conditions refer to COMMON POLICY CONDITIONS APPLYING TO SECTIONS I AND II.

# SECTION II – BUSINESS LIABILITY

## Premises Liability

1. **Coverage**

   A. **We** will pay all sums that the **insured** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies.

   This insurance applies only to **bodily injury** or **property damage:**
   1) that occurs during the policy period; and
   2) that is caused by an **occurrence** which takes place at or arises from the ownership, maintenance or use of an **insured premises** as a rental property or held as vacant land.

   B. **We** have the right and duty to defend any claim or suit seeking covered damages. **We** may investigate and settle any claim or suit at **our** discretion but:
   1) the amount **we** will pay for damages is limited as described in **Limits Of Insurance** of SECTION II - BUSINESS LIABILITY.
   2) **our** right and duty to defend ends when **we** have used up the applicable limit of insurance in the payment of judgements or settlements.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided under **Supplementary Payments** of SECTION II - BUSINESS LIABILITY.

2. **Exclusions**

   This insurance does not apply to:

   A. any amount payable by any **insured** to others as a result of a punitive or exemplary damages judgement against any **insured.**

   B. **bodily injury** or **property damage** expected or intended from the standpoint of any **insured.**

   This exclusion does not apply to **bodily injury** resulting from the use of reasonable force to protect persons or property.

   C. **bodily injury** or **property damage** arising out of any contract

   This exclusion does not apply to an **insured contract.**

   D. **bodily injury** or **property damage** arising out of any premises, other than an **insured premises** owned, rented or controlled by any **insured.**

   E. any obligation of any **insured** under a workers compensation, disability benefits or unemployment compensation law or any similar law.

## SECTION II – BUSINESS LIABILITY

F.  **bodily injury** to:

   1) an employee of any **insured** arising out of and in the course of employment by any **insured**.

   2) the spouse, child, parent, brother or sister of an employee as a consequence of an injury to that employee.

   This exclusion applies whether any **insured** may be liable as an employer or in any other capacity and applies to any obligation to share damages with or repay someone else who must pay damages because of the injury.

   This exclusion does not apply to liability assumed by **you** under an **insured contract**.

G.  **bodily injury** or **property damage** arising out of the presence of or the actual, alleged or threatened release, discharge, escape, dispersal, seepage or migration of **pollutants**.

   This exclusion does not apply to :

   1) **bodily injury** or **property damage** caused by heat, smoke or fumes from a hostile fire.  A hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be; or

   2) **bodily injury** that is sustained within a building at an **insured premises** and that is caused by smoke, fumes, vapors or soot from equipment used to heat such building.

H.  any loss, cost or expense arising out of any governmental direction or request that **you** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **pollutants**.

I.  **bodily injury** or **property damage** arising out of the ownership, maintenance, use or entrustment to others of any aircraft, **auto** or watercraft owned or operated by or rented or loaned to any **insured**. Use includes loading or unloading.

   This exclusion does not apply to watercraft while ashore at an **insured premises**.

J.  **bodily injury** or **property damage** arising out of nuclear reaction, radiation, or radioactive contamination, however caused.

K.  **bodily injury** or **property damage** due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

L.  **bodily injury** or **property damage** arising out of any business or professional activities conducted by any **insured**.

   The ownership, maintenance or use of the **insured premises** as a rental property or as vacant land are not considered to be professional activities.

## SECTION II – BUSINESS LIABILITY

M. **property damage** to:

    1) property **you** own, rent or occupy.

    2) premises **you** have sold, given away or abandoned if the **property damage** arises out of any part of those premises.

    3) property loaned to **you**.

    4) personal property in the care, custody or control of any **insured**.

N. **bodily injury** or **property damage** sustained by any **insured**.

O. **bodily injury** or **property damage** arising out of fraud committed by any **insured**.

P. **bodily injury** or **property damage** arising out of willful injury by any **insured** to the property or person of another.

Q. **bodily injury** or **property damage** arising out of willful violation of a penal statute or ordinance committed by or with the consent of any **insured**.

R. **bodily injury** arising out of communicable disease of any kind transmitted by any **insured** including sexually transmitted disease.

S. **bodily injury** arising out of sexual molestation, corporal punishment or abuse.

## Personal Injury and Advertising Injury Liability

1. **Coverage**

    A. **We** will pay all sums that the **insured** becomes legally obligated to pay as damages because of **personal injury** or **advertising injury** to which this insurance applies.

    This insurance applies only to **personal injury** or **advertising injury** caused by an act which:

        1) takes place in the **coverage territory**; and

        2) takes place during the policy period; and

        3) arises out of the ownership, maintenance or use of an **insured premises** as a rental property or as vacant land.

    B. **We** have the right and duty to defend any claim or suit seeking covered damages. **We** may investigate and settle any claim or suit at **our** discretion but:

        1) the amount **we** will pay for damages is limited as described in **Limits Of Insurance** of SECTION II – BUSINESS LIABILITY.

        2) **our** right and duty to defend ends when **we** have used up the applicable limit of insurance in the payment of judgements or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided under **Supplementary Payments** of SECTION II – BUSINESS LIABILITY.

## SECTION II – BUSINESS LIABILITY

2. **Exclusions**

This insurance does not apply to any punitive or exemplary damages judgement against any **insured**, nor does it apply to **personal injury** or **advertising injury**:

A. arising out of oral or written publication of material if done by or at the direction of any **insured** with knowledge of its falsity.

B. arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

C. arising out of any business or professional activity conducted by **you**.

The ownership or management of the **insured premises** as a rental property or as vacant land are not considered to be professional activities.

D. arising out of fraud committed by any **insured**.

E. arising out of willful injury by any **insured** to the person or property of another.

F. caused by the willful act of any **insured** but sums awarded as damages because of negligence are not excluded.

G. arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the **insured**.

H. for which the **insured** has assumed liability in a contract or agreement.

This exclusion does not apply to liability for damages that the **insured** would have in the absence of the contract or agreement.

I. sustained by any **insured**.

J. arising out of the presence of or the actual, alleged or threatened release, discharge, escape, dispersal, seepage or migration of **pollutants** at or from the **insured premises**.

K. any loss, cost or expense arising out of any governmental direction or request that **you** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **pollutants**.

L. any obligation of any **insured** under a workers compensation, disability benefits or unemployment compensation law or any similar law.

## SECTION II – BUSINESS LIABILITY

M.  to an employee of any **insured** arising out of and in the course of employment by any **insured**, or the spouse, child, parent, brother or sister of an employee as a consequence of an injury to that employee.

This exclusion applies whether any **insured** may be liable as an employer or in any other capacity and applies to any obligation to share damages with or repay someone else who must pay damages because of the injury.

N.  arising out of nuclear reaction, radiation, or radioactive contamination, however caused.

O.  due to war, whether or not declared, or any act or condition incident to war.  War includes civil war, insurrection, rebellion or revolution.

## Non-Owned Auto Liability

1.  **Coverage**
    This coverage is optional and applies only if so stated on the Declarations Page.

    A.  **We** will pay all sums that the **insured** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies.

    This insurance applies only to **bodily injury** or **property damage**  that:
    1)  occurs during the policy period; and
    2)  is caused by an **occurrence** which takes place at or arises from the ownership, maintenance or use of an **insured premises** as a rental property or as vacant land; and
    3)  arises out of the use of a **non-owned auto** by any person other than **you** in connection with the ownership, maintenance or use of an **insured premises** as a rental property or as vacant land.

    B.  **We** have the right and duty to defend any claim or suit seeking covered damages. **We** may investigate and settle any claim or suit at **our** discretion but:
    1)  the amount we will pay for damages is limited as described in **Limits Of Insurance** of SECTION II – BUSINESS LIABILITY.
    2)  **our** right and duty to defend ends when **we** have used up the applicable limit of insurance in the payment of judgements or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided under **Supplementary Payments** of SECTION II – BUSINESS LIABILITY.

## SECTION II – BUSINESS LIABILITY

2. **Exclusions**

This insurance does not apply to:

A. any amount payable by any **insured** to others as a result of a punitive or exemplary damages judgement against any **Insured**.

B. **bodily injury** or **property damage** arising out of the maintenance, operation, use, loading or unloading of any **non-owned auto** used in any business or professional activity other than the management of the **insured premises**.

C. **property damage** to:

   1) property owned or being transported by, or rented or loaned to any **insured**.
   2) property in the care, custody or control of any **insured**.

D. any obligation of any **insured** under a workers compensation, disability benefits or unemployment compensation law or any similar law.

E. **bodily injury** to:

   1) an employee of any **insured** arising out of and in the course of employment by and **insured**.
   2) the spouse, child, parent, brother or sister of an employee as a consequence of any injury to that employee.

   This exclusion applies whether any **insured** may be liable as an employer or in any other capacity and applies to any obligation to share damages with or repay someone else who must pay damages because of the injury.

   This exclusion does not apply to liability assumed by **you** under an **insured contract**.

F. **bodily injury** or **property damage** sustained by any **insured**.

G. **bodily injury** or **property damage** arising out of fraud committed by any **insured**.

H. **bodily injury** or **property damage** arising out of willful injury by any **insured** to the property or person of another.

I. **bodily injury** or **property damage** arising out of willful violation of a penal statute or ordinance committed by or with the consent of any **insured**.

## SECTION II – BUSINESS LIABILITY

### Hired Auto Liability

1. **Coverage**
   This coverage is optional and applies only if so stated on the Declarations Page.

   A. **We** will pay all sums that the **insured** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies.

   This insurance applies only to **bodily injury** or **property damage** that:

   1) occurs during the policy period; and
   2) is caused by an **occurrence** which takes place at or arises from the ownership, maintenance or use of an **insured premises** as a rental property or as vacant land; and
   3) arises out of the use of a **hired auto** by **you** or **your** employees in connection with the ownership, maintenance or use of an **insured premises** as a rental property or as vacant land.

   B. **We** have the right and duty to defend any claim or suit seeking covered damages. **We** may investigate and settle any claim or suit at **our** discretion but:

   1) the amount **we** will pay for damages is limited as described in **Limits Of Insurance** of SECTION II – BUSINESS LIABILITY.
   2) **our** right and duty to defend ends when **we** have used up the applicable limit of insurance in the payment of judgements or settlements.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided under **Supplementary Payments** of SECTION II – BUSINESS LIABILITY.

2. **Exclusions**
   This insurance does not apply to:

   A. any amount payable by any **insured** to others as a result of a punitive or exemplary damages judgement against any **insured**.

   B. **bodily injury** or **property damage** arising out of the maintenance, operation, use, loading or unloading of any **non-owned auto** used in any business or professional activity other than the management of the **insured premises**.

   C. **property damage** to:

   1) property owned or being transported by, or rented or loaned to any **insured**.
   2) property in the care, custody or control of any **insured**.

   D. any obligation of any **insured** under a workers compensation, disability benefits or unemployment compensation law or any similar law.

## SECTION II – BUSINESS LIABILITY

E. **bodily injury** to:

    1) an employee of any **insured** arising out of and in the course of employment by and **insured**.

    2) the spouse, child, parent, brother or sister of an employee as a consequence of any injury to that employee.

This exclusion applies whether any **insured** may be liable as an employer or in any other capacity and applies to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by **you** under an **insured contract**.

F. **bodily injury** or **property damage** sustained by any **insured**.

G. **bodily injury** or **property damage** arising out of fraud committed by any **insured**.

H. **bodily injury** or **property damage** arising out of willful injury by any **insured** to the property or person of another.

I. **bodily injury** or **property damage** arising out of willful violation of a penal statute or ordinance committed by or with the consent of any **insured**.

## Premises Medical Payments

1. **Coverage**

**We** will pay medical and funeral expenses which result from **bodily injury** sustained at the **insured premises** and caused by an **accident** provided that:

A. the **accident** takes place during the policy period; and

B. the **accident** takes place at an **insured premises**; and

C. the expenses are incurred and reported to **us** within one (1) year of the date of the **accident**; and

D. the injured person submits to examination, at **our** expense, by physicians of **our** choice as often as **we** require.

2. **Exclusions**

This insurance does not apply to **bodily injury** to any person:

A. who is an **insured**.

## SECTION II – BUSINESS LIABILITY

B.   hired to do work for or on behalf of any **insured**.

C.   who is a tenant or an employee of a tenant of any **insured**.

D.   who is an employee of any **insured**, if benefits for the **bodily injury** are payable or must be provided under a workers compensation or disability benefits law or a similar law.

E.   who is injured while taking part in athletics.

F.   who is injured due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

G.   to whom the **insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

This exclusion does not apply to an **insured contract**.

H.   whose injuries arise out of the ownership, maintenance, use or entrustment to others of any aircraft, **auto** or watercraft owned or operated by or rented or loaned to any **insured**. Use includes loading or unloading.

I.   whose injuries arise out of any business or professional activities, other than the management of the **insured premises**, conducted by any **insured**.

J.   whose injuries arise from the presence of or the actual, alleged or threatened release, discharge, escape, dispersal, seepage or migration of **pollutants** at or from the **insured premises**.

K.   who suffers **bodily injury** arising out of nuclear reaction, radiation or radioactive contamination, however caused.

## Supplementary Payments

With respect to any claim or suit **we** defend under Section II of this policy, **we** will pay in addition to the Business Liability limit of insurance shown on the Declarations Page:

1.   all expenses **we** incur.

2.   up to $1,000 for the cost of bail bonds required because of **accidents** or traffic law violations arising out of the use of any vehicle to which **bodily injury** liability coverage applies. **We** do not have to furnish or obtain these bonds.

## SECTION II – BUSINESS LIABILITY

3. the premium for bonds to release attachments but only for bond amounts within the Business Liability limit of insurance shown on the Declarations Page. **We** do not have to furnish or obtain these bonds.

4. all reasonable expenses incurred by the **insured** at **our** request to assist **us** in the investigation or defense of the claim or suit including actual loss of earnings of up to $250 a day because of time off from work.

5. all costs taxed against the **insured** in the suit.

6. pre-judgement interest awarded against the **insured** on that part of the judgement **we** pay. If **we** make an offer to pay the applicable limit of insurance, **we** will not pay any pre-judgement interest based on that period of time after the offer.

7. all interest on the full amount of any judgement that accrues after entry of the judgement and before **we** have paid, offered to pay, or deposited in court the part of the judgement that is within the applicable limit of insurance.

### Limits of Insurance

1. Each **Occurrence** or Act

   The most **we** will pay for the sum of all damages to which this policy applies as a result of any one **occurrence** or any one act is the Business Liability limit of insurance shown on the Declarations Page regardless of the number of:

   A. **insureds**.

   B. claims made or suits brought.

   C. persons or organizations making claims or bringing suits.

   D. policies issued by **us** to any **insured**. If such other policies exist, the maximum limit of this Company's liability shall not exceed the highest limit set forth in any one such policy.

   E. coverages applicable to any **occurrence** or act.

2. All **Occurrences** or Acts

   The most **we** will pay for all damages to which this policy applies, regardless of the number of **occurrences** or acts that take place during any consecutive policy period of twelve (12) months or less, is the aggregate limit for Business Liability shown on the Declarations Page. With respect to **Premises Liability** coverage only, this annual aggregate limit of insurance applies separately to each location described on the Declarations Page.

With respect to items 1. and 2. above, all **bodily injury** or **property damage** resulting from any one **accident** including continuous or repeated exposure to the same harmful conditions shall be considered to be the result of one **occurrence**.

## SECTION II – BUSINESS LIABILITY

3.  The most **we** will pay for medical and funeral expenses as provided under **Premises Medical Payments** coverage for any one **accident** is the Premises Medical Payments limit shown on the Declarations Page.

## Your Duties in the Event of an Occurrence, Act, Claim or Suit

1.  **You** must promptly notify **us** of an incident or event that may result in a claim. Notice should include:

    A.  how, when and where the incident or event took place.

    B.  the names and addresses of any injured person and witness.

2.  If a claim is made or suit is brought against any **insured**, **we** must be notified promptly in writing and **you** and any other involved **insured** must:

    A.  immediately send **us** copies of any demands, notices, summonses or other legal papers received in connection with the claim or suit.

    B.  authorize **us** to obtain records and other information.

    C.  cooperate with **us** in the investigation, settlement or defense of the claim or suit.

    D.  assist **us**, upon **our** request, in the enforcement of any right against any person or organization that may be liable to any **insured** because of injury or damage to which this insurance may also apply.

3.  No **insured** shall, except at the **insured's** own cost, make a payment, assume any obligation or incur any expense, other than for first aid, without **our** consent.

## Other Insurance

The insurance provided by this policy is excess over any other insurance except insurance specifically written to cover as excess over the limits of this policy. **We** have no duty to defend any claim or suit that any other insurer has a duty to defend. If no other insurer defends, **we** will undertake to do so but **we** will be entitled to the **insured's** rights against any such other insurers.

## Transfer Of Rights Of Recovery Against Others To Us

If the **insured** has rights to recover all or part of any payment **we** have made under this policy, those rights shall be transferred to **us**. The **insured** shall do nothing to impair said rights. At **our** request, the **insured** shall help **us** to enforce them.

This condition does not apply to **Premises Medical Payments** coverage.

## SECTION II – BUSINESS LIABILITY

### Transfer Of Your Rights And Duties

**Your** rights and duties under this policy may not be transferred without **our** written consent, except in the case of death of an individual named **insured**.

If **you** die, **your** rights and duties will be transferred to **your** legal representative but only while acting within the scope of duties as **your** legal representative. Until **your** legal representative is appointed, anyone having proper, temporary custody of **your** property will have **your** rights and duties but only with respect to that property.

### Bankruptcy

Bankruptcy or insolvency of any **insured** or any **insured's** estate will not relieve **us** of **our** obligations.

### Legal Action Against Us

1. No person or organization has a right under this policy:

   A. to join **us** as a party or otherwise bring **us** into a suit asking for damages from any **insured**.

   B. to sue **us** on this policy unless all of its terms have been fully complied with.

2. A person or organization may sue **us** to recover on an agreed settlement or on a final judgement against any **insured** obtained after an actual trial but **we** will not be liable for damages that are not payable under the terms of this policy. An agreed settlement means a settlement and release of liability signed by **us**, the **insured** and the claimant or the claimant's legal representative

### Separation Of Insureds

Except with respect to the Limits of Insurance, this insurance applies separately to each **insured** against whom claim is made or suit is brought.

## COMMON POLICY CONDITIONS APPLYING TO SECTIONS I AND II

### Cancellation And Non-Renewal

1. **You** may cancel this policy at any time by returning it to **us** or by notifying **us** in writing of the date cancellation is to take effect.

   Any pro-rata premium due **you** will be refunded within a reasonable time after the cancellation takes effect.

2. **We** may:
   A. cancel this policy for non-payment of premium by giving **you** fifteen (15) days written notice; or
   B. non-renew this policy for any reason by giving **you** at least sixty (60) days, but not more than one hundred twenty (120) days, written notice to be effective at the next anniversary or expiration date of the policy, whichever is first.

   **We** will also mail such notice of cancellation or non-renewal to each mortgagee or other person or entity shown on this policy to have an insurable interest in the covered property.

   **We** will state the reason for cancellation or non-renewal on the written notice.

### Waiver Or Change Of Policy Conditions

This policy contains all the agreements between **you** and **us** concerning this insurance. A waiver or change of any provision of this policy must be in writing by **us** to be valid.

## DEFINITIONS APPLYING TO SECTIONS I AND II

Words which appear in bold print, other than titles and headings, have the meaning given them in this section.

1. **Accident** means an undesigned, unexpected and rapidly occurring event.

2. **Accidental** means undesigned, unexpected and rapidly occurring.

3. **Advertising injury** means injury resulting from an oral or written publication of material that disparages a person's or organization's goods, products or services.

4. **Auto** means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment.

5. **Bodily injury** means bodily injury and sickness or disease sustained by a person, including death resulting from any of these at any time.

6. **Coverage Territory** means:

   A. the United States of America, its territories and possessions, Puerto Rico and Canada.

   B. international waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in A. above.

   C. all parts of the world if:
      1) the injury or damage arises out of the activities of a person whose home is in the territory described in A. above but is away for a short time on **your** business; and
      2) the **insured's** responsibility to pay damages is determined in a suit on the merits in the territory described in A. above or in a settlement to which **we** agree.

7. **Covered equipment** means **your** property and property of others which is in **your** care, custody or control for which **you** are legally liable and which is operated under **your** control; and

   A. that is built to operate under vacuum or pressure, other than weight of contents; or

   B. that is used for the generation, transmission or utilization of energy. This includes but is not limited to heating, air conditioning and refrigeration systems, elevators, motors, generators, compressors, telephone systems, or electronic premises security systems, including computer chips embedded in any of these or computer hardware used to operate or monitor any of these. If any **covered equipment** requires inspection to comply with state or municipal boiler and pressure vessel regulations, **you** agree to comply with that requirement at **your** cost.

8. **Equipment breakdown** means **accidental** breakdown of **covered equipment** that manifests itself by direct physical damage to the **covered equipment** that necessitates repair or replacement. However, none of the following is **equipment breakdown**:

   A. leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

   B. the functioning of any safety or protective device.

## DEFINITIONS APPLYING TO SECTIONS I AND II

9. **Hazardous substance** means any substance that has been declared to be hazardous to health by a governmental agency.

10. **Hired auto** means any **auto you** lease, hire or borrow for a period of less than thirty (30) days.

    This does not include any **auto you** lease, hire or borrow from any of **your** employees, partners, executive officers, trustees, trustors, beneficiaries, stockholders, managers or members of **your** limited liability company, or members of any of their households.

11. **Insured** means:

    A. as to Premises Liability, **Personal Injury** and **Advertising Injury** Liability Coverages

        1) an individual shown on the Declarations Page and his or her spouse but only with respect to the ownership, maintenance or use of the **insured premises** as a rental property or as vacant land.

        2) a partnership or joint venture shown on the Declarations Page, its partners, members and their spouses but only with respect to the ownership, maintenance or use of the **insured premises** as a rental property or as vacant land.

        3) a trust shown on the Declarations Page, its trustees, trustors and beneficiaries but only with respect to the ownership, maintenance or use of the **insured premises** as a rental property or as vacant land.

        4) any organization, other than a partnership, joint venture or trust, shown on the Declarations Page, its executive officers, stockholders and members and managers of a limited liability company but only with respect to the ownership, maintenance or use of the **insured premises** as a rental property or as vacant land.

        5) **your** employees, but only for acts within the scope of their employment by **you** in connection with the ownership, maintenance or use of the **insured premises** as a rental property or as vacant land.

        6) any person or organization while acting as **your** real estate manager for an **insured premises**.

        7) any person or organization having lawful, temporary custody of **your** property if **you** die.

        8) **your** legal representative if **you** die but only with respect to duties as such. That representative will have all **your** rights and duties under this policy.

    B. as to **Non-Owned Auto** Liability Coverage

        1) **you**.

        2) **your** partner(s) or executive officer(s) while using a **non-owned auto** in connection with the ownership, maintenance or use of the **insured premises** as a rental property or held as vacant land.

        3) trustees, trustors, and beneficiaries of a trust shown on the Declarations Page while using a **non-owned auto** in connection with the ownership, maintenance or use of the **insured premises** as a rental property or as vacant land.

## DEFINITIONS APPLYING TO SECTIONS I AND II

4) members and managers of a limited liability company shown on the Declarations Page while using a **non-owned auto** in connection with the ownership, maintenance or use of the **insured premises** as a rental property or as vacant land.

5) None of the following is an **insured**:

    a) any person engaged in the business of his or her employer for **bodily injury** to any co-employee of such person injured in the course of employment.

    b) any partner or executive officer for any **auto** owned by such partner or officer or a member of his or her household.

    c) any trustee, trustor, or beneficiary of a trust shown on the Declarations Page for any **auto** owned by such trustee, trustor, or beneficiary or a member of his or her household.

    d) **your** stockholders for any **auto** owned by such stockholders or members of their households.

    e) any member or manager of a limited liability company shown on the Declarations Page for any **auto** owned by such member or manager or a member of his or her household.

    f) the owner of a **non-owned auto** or any agent or employee of any such owner.

    g) any person or organization for the conduct of any current or past partnership or joint venture not shown on the Declarations Page.

C. as to **Hired Auto Liability Coverage**

1) **you.**

2) any person using a **hired auto** with **your** permission.

3) None of the following is an **insured**:

    a) any person engaged in the business of his or her employer for **bodily injury** to any co-employee of such person injured in the course of employment.

    b) any partner or executive officer for any **auto** owned by such partner or officer or a member of his or her household.

    c) any trustee, trustor, or beneficiary of a trust shown on the Declarations Page for any **auto** owned by such trustee, trustor, or beneficiary or a member of his or her household.

    d) **your** stockholders for any **auto** owned by such stockholders or members of their households.

    e) any member or manager of a limited liability company shown on the Declarations Page for any **auto** owned by such member or manager or a member of his or her household.

    f) the owner or lessee (of whom **you** are a sub-lessee) of a **hired auto** or any agent or employee of any such owner or lessee.

    g) any person or organization for the conduct of any current or past partnership or joint venture not shown on the Declarations Page.

## DEFINITIONS APPLYING TO SECTIONS I AND II

12. **Insured Contract** means that part of any contract pertaining to the ownership, maintenance or use of an **insured premises** as a rental property under which **you** assume the tort liability of another to pay damages because of **bodily injury** or **property damage** to a third person or organization if the contract is made prior to the **bodily injury** or **property damage.**

    An **insured contract** does not include:

    A.  a contract or agreement that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        1)  preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications.
        2)  giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage.

    B.  a contract or agreement that pertains to the loan, lease or rental of an **auto** to **you.**

    C.  a contract with any other **insured**.

13. **Insured Premises** means:

    A.  the premises described on the Declarations Page.

    B.  premises sold, given away or abandoned if possession has been relinquished to others.

    C.  any premises which **you** acquire during the policy period provided that no other insurance applies. This insurance ceases ninety (90) days after the date **you** acquire the premises. An additional premium, computed by using the rates and rules in effect at the date of acquisition, will be charged for the period of time **we** provide insurance.

14. **Non-Owned Auto** means any **auto you** do not own, lease, hire or borrow which is used in connection with **your** business.

    If **you** are a partnership, a **non-owned auto** does not include any **auto** owned by any partner of the partnership.

15. **Occurrence** means an **accident.** With respect to SECTION II – BUSINESS LIABILITY only, an **accident** includes continuous or repeated exposure to the same harmful conditions.

16. **Organic Pathogens** means any bacteria, virus, fungus, mold, mushroom, yeast, mildew or mycotoxin or other metabolic products or their spores, scent, vapor or gas or byproducts, or any reproductive body they produce.

17. **Our** refers to the Company providing this insurance.

18. **Personal Injury** means injury, other than **bodily injury,** arising out of one or more of the following acts:

    A.  false arrest, detention or imprisonment
    B.  malicious prosecution.
    C.  wrongful entry into premises that a person or organization occupies or wrongful eviction of a person or organization from premises that the person or organization occupies.

## DEFINITIONS APPLYING TO SECTIONS I AND II

    D.  oral or written publication of material that slanders or libels a person or organization.

    E.  oral or written publication of material that violates a person's right of privacy.

19. **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

20. **Property damage** means:

    A.  physical injury to tangible property including resulting loss of use of that property.

    B.  loss of use of tangible property that is not physically injured.

21. **Sinkhole collapse** means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or similar rock formations.  It does not include sinking or collapse of land into manmade underground cavities nor the cost of filling sinkholes.

22. **Us** refers to the Company providing this insurance.

23. **Volcanic action** means lava flow, airborne shock waves, ash, dust or other particulate matter caused by or resulting from volcanic eruption.

24. **We** refers to the Company providing this insurance.

25. **You** and **your** refer to the person or entity shown on the Declarations Page as an insured.

As of: 10/25

2778502    RIVERPORT INSURANCE COMPANY OF CALIFORNIA

## INCREASED REPLACEMENT COST LIMITS ENDORSEMENT

### Modifies SECTION I – BUSINESS PROPERTY AND RENTS

### Premier Building Owner's Package Policy

It is agreed that the policy is amended to add the following:

If **you** repair or replace the structure(s) insured under this policy in accordance with paragraphs 1.A., B., or C. of the **Basis of Loss Payment** section, the Limit of Insurance for Structures shown on the Declarations Page is increased to 125% of the amount shown.

All other policy terms, limitations, and conditions remain unchanged.

2778502    RIVERPORT INSURANCE COMPANY OF CALIFORNIA

# GREEN BUILDING ENDORSEMENT
# NON-CERTIFIED BUILDINGS

### Modifies SECTION I – BUSINESS PROPERTY AND RENTS

### Premier Building Owner's Package Policy

It is agreed that the policy is amended to add the following:

Subject to a minimum limit of $1,000 and a maximum limit of the amount shown on the Declarations Page for Green Building Coverage for Non-Certified Buildings, we will pay up to 5% of the amount of a covered loss to covered structures for additional cost to repair or replace damaged property with property that meets Green Building certification guidelines for either the U.S. Green Building Council under their LEED® Green Building Rating System™, the Green Building Initiative's Green Globes™ rating system, or the U.S. Environmental Protection Agency's Energy Star® Partner registry system.

This coverage applies to covered structures that have not, prior to the date of loss, been certified as Green Buildings by either the U.S. Green Building Council under their LEED® Green Building Rating System™, the Green Building Initiative's Green Globes™ rating system, or the U.S. Environmental Protection Agency's Energy Star® Partner registry system.

This endorsement provides coverage for expenses incurred voluntarily by the **insured** to repair or replace damaged property to Green Building certification standards not required by application of Ordinance or Law.

All other policy terms, limitations, and conditions remain unchanged.

As of: 10/25

2778502    RIVERPORT INSURANCE COMPANY OF CALIFORNIA

## PROPERTY EXCLUSION:  YOUR BUSINESS PERSONAL PROPERTY FURNISHED FOR USE BY YOUR TENANTS

### Modifies SECTION I – BUSINESS PROPERTY AND RENTS

### Premier Building Owner's Package Policy

In consideration of the premium and subject to all terms and conditions of the policy of which this endorsement applies and only with respect to coverage at the location to which this endorsement applies, **you** and **we** agree the description of property covered no longer includes **your** business personal property furnished for use by **your** tenants.  Provision 1.A. under **What We Cover** in SECTION 1 – BUSINESS PROPERTY AND RENTS is deleted in its entirety and is replaced with the following:

    A.   <u>Structures</u>

        Up to the limit shown on the Declarations Page for **your** structures and **your** business personal property used to maintain, service, repair or construct **your** structures.

All other policy terms, limitations and conditions remain unchanged.

As of: 10/25

2778502   RIVERPORT INSURANCE COMPANY OF CALIFORNIA

## LOSS OF RENTS COVERAGE DELETED

### Modifies SECTION I – BUSINESS PROPERTY AND RENTS

### Premier Building Owner's Package Policy

In consideration of the premium and subject to all terms and conditions of the policy of which this endorsement applies and only with respect to coverage at the location to which this endorsement applies, **you** and **we** agree that the policy provision of <u>Limit Of Insurance,</u> 2. Loss of Rents, and the provisions of <u>Losses Covered,</u> , sections 1.A. <u>Ordinance,</u> B. <u>Rents,</u> and C. <u>Contingent Loss of Rents</u> are deleted in their entirety and are replaced with the following:

## <u>Limits of Insurance</u>

2.  Loss of Rents
    Coverage for loss of rents is not provided at the insured location(s) to which this endorsement applies.

## <u>Losses Covered</u>

1.  At a location named on the Declarations Page for the limits shown below:

    A.  <u>Ordinance</u>

        1)  $250,000 in the aggregate as an additional amount of insurance, unless a greater limit of insurance for Ordinance or Law is shown on the Declarations Page, for any increase in the cost to repair or replace a damaged or destroyed covered structure which results from the enforcement of any ordinance, law or code regulating the use, repair or construction of that structure.

            $2,500 is the most we will pay because of the enforcement of any ordinance, law or code in effect at the time of the loss or damage which requires compliance even in the absence of damage to the structure.

        2)  Financial loss of the undamaged portion of a damaged structure when the undamaged portion must be demolished as a result of the enforcement of any ordinance, law or code regulating the use, repair or construction. This coverage does not increase the limit of insurance shown on the Declarations Page for the damaged structure.

    B.  <u>Rents</u>

        Coverage for loss of rents is not provided at the insured location(s) to which this endorsement applies.

    C.  <u>Contingent Loss of Rents</u>

        Coverage for loss of rents is not provided at the insured location(s) to which this endorsement applies.

All other policy terms, limitations and conditions remain unchanged.

As of: 10/25

2778502    RIVERPORT INSURANCE COMPANY OF CALIFORNIA

## ENTITY NOT INSURED ENDORSEMENT
### Modifies SECTION II – BUSINESS LIABILITY
### Premier Building Owner's Package Policy

In consideration of the premium and subject to all terms and conditions of the policy of which this endorsement applies, **you** and **we** agree to the following:

All coverages provided in SECTION II – BUSINESS LIABILITY of this policy, including the duty to defend, does not apply to:

1.    any corporation shown on the Declarations Page as an Entity Not Insured including its officers, employees, shareholders or members while acting within the scope of their duties as such.

2.    any officer, employee, shareholder or member for any claim or suit covered under a liability policy issued to the corporation shown on the Declarations Page as an Entity Not Insured.

All other policy terms, limitations and conditions remain unchanged.

Exhibit B



PH 602.957.8800 | FX 602.992.2514
TOLL FREE: 877.992.7577
www.SkiptonInc.com

CORPORATE OFFICE
8710 E. Vista Bonita Dr.
Scottsdale, AZ 85255

**SKIPTON**
claims management

*SENT VIA U.S. MAIL AND ELECTRONIC MAIL TO: Rich@deanshomer.com*

September 2, 2016

Richard D. Pineda
Deans & Homer
Managing Underwriters for
Riverport Insurance Company
Claim#: 2778502-02
2920 E Camelback Rd. STE 240
Phoenix AZ 85016

> Client/Insured: Manlos Properties, LLC
> Loss Location: 10201 N 35th Avenue Phoenix, AZ
> Date of Loss: 2015-10-25
> Claim #: 2778502-02

Dear Mr. Pineda,

We are writing you today in response to your letter of denial written on June 15, 2016 and your communication to us on August 10, 2016. In this communication, we wish to address what we believe to be a wrongful denial of coverage by Riverport Insurance Company (Riverport) and more importantly, purposeful withholding of documents pertinent to the processing of the Assured's claim.

We will begin by addressing the wrongful denial of coverage which states that Jason Mosher, Riverport's claims agent/independent adjuster observed hail impacts on the roofs and HVAC equipment of the insured premises that were "over 1" in size." Given the hail reports that he obtained suggesting that this hailstorm produced hail "that was .8", Riverport has concluded that these damages were likely caused by another storm. Unless Riverport can produce their underwriter's inspection report showing that these roofs had prior damage, Riverport is obligated to provide coverage for this loss event. The courts in Arizona are quite clear on the obligations of an insurance company to provide coverage when they take premium payments from an insured and then try to blame prior conditions. If Riverport issued a policy of insurance on this property on August 30, 2012, they have legally assumed all risks of loss at the time of placement. This issue was discussed in an Insurance case over windstorm damages. While that case involved windstorm, the principle elements of coverage and the intent to limit recoveries based upon allegations of "prior conditions" was clearly addressed by the court.

In *Koory v. Western Cas. & Sur. Co.,* 153 Ariz. 412, 737 P2d 388, the court found as follows:
"The plain language of Koory's policy requires neither that the wind be the sole cause of loss, nor that the insured building be in "reasonable condition".
**Koory purchased insurance for his warehouse, presumably in its then-present condition, against "all direct**

Riverport Insurance Company:
Re: Manios Properties, LLC: Claim #: 2778502
September 2, 2016
Page 2 of 4

loss caused by...windstorm." ...Koory's insurance policy does not limit windstorm coverage to damage to buildings in objectively reasonable condition or to damages caused solely by the wind. If the damage to Koory's warehouse was caused by a windstorm, **Koory may recover under his policy even if other factors contributed to his loss." (Bold emphasis added)

While Riverport might contend that these damages are the result of a storm that pre-dated their policy, they have the burden of proving that these damages were pre-existing. Conjecture is not proof of prior damages. Absent an underwriting report with photographs documenting prior damages, the task of providing adequate proof of their contention will be an up-hill battle. They will also need to explain why they issued an insurance policy to this insured with no restrictions for these prior damages. This is clearly a burden that Riverport cannot meet.

With regard to Riverport's contention that the hail came from a previous storm, we ask that you provide some sort of support for your statement that there were damages that pre-dated the initiation of this policy. This would be easily accomplished with the release of the requested underwriting documents inclusive of the property inspection report showing the age and condition of the roof when the policy was placed.

Riverport's denial of coverage continues with their reliance on a hail map report from Core Logic. We attempted to verify Riverport's determination of the size of hail as reported by Core Logic and found no hail reports for either of the dates referenced in Riverport's denial of coverage. We did however find multiple hail maps available for purchase with the hail size reported of 1" or more within your date range of October 15-25, 2015, with the most significant of those storms occurring on October 20, 2015. We believe that this is the correct date of loss, as we have recently settled a hail storm claim on this date on the K Mart building roof just down the street from this insured premises. This building showed clear evidence of hail damages from hail stones in excess of one inch (1"). A screenshot of these maps has been attached for your review.

Additionally, we did some basic research on the size of hail as reported to have affected the Assured's property during the date range referenced in the denial letter. As you will see from the attached report and map from the National Oceanic and Atmospheric Administration, NOAA.gov, that hail of 1" was reported almost directly on the Assured's property. We also found a report from interactivehailmaps.com that reported "hail of 1.00 inches reported near 35th Ave and Peoria, which is the closest intersection to that of the Assured's property. Clearly, these additional hail maps lend credibility to the fact that this storm was likely larger than being characterized by Riverport Insurance.

Moreover, a critical review of the hail reporting website in which Riverport Insurance is relying upon, states that they do "not warrant that product descriptions or other content on this site is accurate, complete, reliable, current, or error-free. Thus leading us to believe that the characterization of the hail being too small to cause the damage to the Assured's property could not be as dispositive as Riverport would like us to believe.

With respect to Riverport's determination that "The roof and HVAC units reflected hail hits that were over 1" in size" we believe this is an overestimation of size of the hail damages. While some hits may appear to be over an inch in size, there are many that were significantly smaller and caused just as much if not more damage than the few larger hits. Obviously, a hail storm does not necessarily produce consistently sized hailstones. Hailstones form in the atmosphere and fall to the ground in varying size and sometime lump configurations.

We have attached several photos of the largest hits found on site and the surrounding much smaller hail

Riverport Insurance Company:
Re: Manios Properties, LLC: Claim #: 2778502
September 2, 2016
Page 3 of 4

damage. As you will see from the attached photo of the damages account for a size range of .5" to less than 1" in size.

What is clear from the denials of coverage provided is that Riverport was not investigating this claim and looking to provide the coverage the Assured purchased and expected from Riverport. Rather Riverport seems to be on a quest to avoid payment of this claim through a biased and results oriented claim investigation. How else can one explain how Riverport missed the hailstorm maps that show 1" hail at this site during the period in question.

Furthermore, Riverport has not provided the Assured with any sort of evidence to support their coverage position including but not limited to, the Core Logic report, the Independent adjuster's investigation report, or any of the underwriting documents showing the condition of the roof when Riverport began insuring the property. Surely, if Riverport Insurance is relying upon these documents as a basis of their denial of coverage, the Assured would be entitled to copy of them.

Riverport and their claims agent/independent adjuster have violated the first duty of an insurance adjuster, which is to seek to find coverage for a loss. You may wish to review the guidance provided in the claims adjusting training text for AIC 33 by Markham, James J. *The Claims Environment.* Malvern: Insurance Institute of America, 1993 Print which says on page 13 paragraph 3, as follows:

> "The primary duty of the claim representative is to deliver the promise to pay. Therefore, the claim representative's chief task is to seek and find coverage, not to seek and find coverage controversies or to deny or dispute claims. Because of the personal relationship formed in an insurance transaction, the insurance company should not place its interests above the insured's. The claims professional handling claims should honor the company's obligations under the implied covenant of good faith and fair dealings."

As you certainly should be aware, in Arizona the duty of good faith and fair dealing is implied in every contract of insurance. "An insurance contract is not an ordinary commercial bargain; 'implicit in the contract and the relationship is the insurer's obligation to play fairly with its insured." *Id.* (quoting *Rawlings v. Apodaca*, 151 Ariz. 149,154, 726 P.2d 565, 570 (1986). "The insurer has 'some duties of a fiduciary nature,' including '[e]qual consideration, fairness and honesty.'" *Id.* (quoting *Rawlings*, 151 Ariz. At 115, 726 P. 2d at 571).

In order to "act in good faith" and give "equal consideration" requires engaging in a transparent claims process, whereby there is no game playing or hiding of documents, but rather all of the cards are on the table. Riverport's refusal to share crucial claim documents utilized in the decision to affirm or deny coverage is a direct violation of this implied relationship between the contractual parties.

Riverport's refusal to release a copy of the Assured's policy application and the underwriting documents that show the property inspection of the conditions of the roof at the time of placement of coverage is not just a violation of the covenant of good faith it is a violation of the Arizona Administrative Code R20-6-801 D(2) which states that:

> "No agent shall conceal from first party claimant's benefits, coverages or other provisions of any insurance policy or insurance contract when such benefits, coverages, or other provisions are pertinent to a claim."

With that said, we hereby request any and all documents utilized in the determination of coverage for this loss

ARIZONA . CALIFORNIA . FLORIDA . ILLINOIS . NEVADA . TEXAS

Riverport Insurance Company:
Re: Manios Properties, LLC: Claim #: 2778502
September 2, 2016
Page 4 of 4

including but not limited to the Core Logic Hail Report, any and all field inspection reports, any and all applications and or inspections conducted in the placement of the insurance contract. We further request that Riverport reconsider their position with respect to coverage for this loss.

   We thank you for your anticipated prompt response. Should you have any questions, feel free to contact the undersigned.

Sincerely,

Justin Skipton E.E.

Justin Skipton
Executive General Adjuster for
Skipton & Associates, Inc.


Enclosures
Exhibit A – Photos
Exhibit B- Hail Map
Exhibit C – Reported Areas
Exhibit D- Weather Verification

Cc: Michael Poli, Esq. The Merlin Law Group (via email only): mpoli@merlinlawgroup.com]
   Manios Properties, LLC:  joy@eaglecommercial.com
   Matt McColley: claims@riverportinsurance.com



# SKIPTON
## Claims Management Report

Manios Properties
Claim #2778502
Structural Loss Claim

# Exhibit A

## Photos











# Exhibit B
## Hail Map



Call Us Today! (512) 994-2550   |   support@interactivehailmaps.com (mailto support@interactivehailmaps.com)

Home (http://www.interactivehailmaps.com/)   FAQ (http://www.interactivehailmaps.com/frequently-asked-questions/)   Contact (http://www.interactivehailmaps.com/contact-us/)

Sign In (https://maps.interactivehailmaps.com/)

 (http://www.interactivehailmaps.com)

Pricing & Signup (http://www.interactivehailmaps.com/pricing-page/)   Videos (http://www.interactivehailmaps.com/videos/)

Sample Maps (http://www.interactivehailmaps.com/try-interactive-hail-maps-live/)

# Hail Map for Phoenix, AZ - Tuesday, October 20, 2015
(http://www.interactivehailmaps.com/hail-map/october-20-2015)



| Possible Housing Impact | |
| --- | --- |
| 1.00" hail | 7,742 |
| 1.25" hail | 7,327 |
| 1.50" hail | |
| 1.75" hail | |
| 2.00" hail | |
| 2.25" hail | |
| 2.50" hail | |
| 2.75" hail | |
| 3.00"+ hail | |

This map includes Hail Replay™ – our comprehensive SUPER-RES radar replay tool.
(http://www.interactivehailmaps.com/hail-replay/)

Purchase This Map $199 (/Registration/MapPurchase?Region=Phoenix-AZ&Date=2015-10-20)

## On-the-Ground Hail Reports

Number of Reports: 3     Average Size Reported: 1.00"     Max Size Reported: 1.00"

Subscribe to the Phoenix, AZ Region for $599 (/Registration/SubscribeRegion?Plancode=1su_cy7wal&Regioncode=Phoenix-/

Subscribe to the State of Arizona for $599 (/Registration/SubscribeRegion?Plancode=1su_cy7ral&StateAbbr=AZ)

# Cities / Towns Impacted by Hail in the Phoenix, AZ Region on 10/20/2015

Anthem, AZ (http://www.interactivehailmaps.com/local-hail-map/anthem-az/)  •  Apache Junction, AZ (http://www.interactivehailmaps.com/local-hail-map/apache-junction-az/)  •  Avondale, AZ (http://www.interactivehailmaps.com/local-hail-map/avondale-az/)  •  Black Canyon City, AZ (http://www.interactivehailmaps.com/local-hail-map/black-canyon-city-az/)  •  Buckeye, AZ (http://www.interactivehailmaps.com/local-hail-map/buckeye-az/)  •  Canyon Day, AZ (http://www.interactivehailmaps.com/local-hail-map/canyon-day-az/)  •  Carefree, AZ (http://www.interactivehailmaps.com/local-hail-map/carefree-az/)  •  Cave Creek, AZ (http://www.interactivehailmaps.com/local-hail-map/cave-creek-az/)  •  Central Heights-Midland City, AZ (http://www.interactivehailmaps.com/local-hail-map/central-heights-midland-city-az/)  •  Citrus Park, AZ (http://www.interactivehailmaps.com/local-hail-map/citrus-park-az/)  •  Claypool, AZ (http://www.interactivehailmaps.com/local-hail-map/claypool-az/)  •  Copper Hill, AZ (http://www.interactivehailmaps.com/local-hail-map/copper-hill-az/)  •  East Fork, AZ (http://www.interactivehailmaps.com/local-hail-map/east-fork-az/)  •  El Mirage, AZ (http://www.interactivehailmaps.com/local-hail-map/el-mirage-az/)  •  Fort Apache, AZ (http://www.interactivehailmaps.com/local-hail-map/fort-apache-az/)  •  Glendale, AZ (http://www.interactivehailmaps.com/local-hail-map/glendale-az/)  •  Globe, AZ (http://www.interactivehailmaps.com/local-hail-map/globe-az/)  •  Gold Canyon, AZ (http://www.interactivehailmaps.com/local-hail-map/gold-canyon-az/)  •  Goodyear, AZ (http://www.interactivehailmaps.com/local-hail-map/goodyear-az/)  •  Haigler Creek, AZ (http://www.interactivehailmaps.com/local-hail-map/haigler-creek-az/)  •  Litchfield Park, AZ

FREE HAIL MAP REPORTS



Features          Pricing & Signup          Videos          Browse Hail Events          Sample Maps

# Hail Map for Phoenix, AZ

**Google Map for Phoenix, AZ**

**Search Google for Phoenix, AZ**

Search

Search ...

Contact Interactive Hail Maps

support@interactivehailmaps.com

Connect with Interactive Hail Maps

  

Recent Hail Maps

Hail Map for Wednesday, August 24, 2016

1   Wichita, KS | Grand Island, NE | Hays, KS

Hail Map for Tuesday, August 23, 2016

1   Omaha, NE | Wichita,



2 miles E of Phoenix, AZ



15 miles S of Phoenix, AZ









21 miles NNW of Phoenix, AZ

3.4 miles NE of Phoenix, AZ





10 miles SSE of Phoenix, AZ

12.2 miles SSE of Phoenix, AZ

8.1 miles NNE of Phoenix, AZ

2.5 miles NE of Phoenix, AZ









3.4 miles NE of

Phoenix, AZ





9.1

miles NNE of Phoenix, AZ










7.9 miles WSW of Phoenix, AZ


8.4 miles NNW of Phoenix, AZ

Hail Maps for Phoenix, AZ



1   8/2/2016
    (6th)

1   7/18/2016
    (9th)

1   7/1/2016
    (8th)



1   10/20/2015
    (3rd)

1   10/18/2015
    (2nd)

1   10/6/2015
    (7th)



1   8/31/2015
    (5th)

0   8/29/2015
    (19th)

0   8/27/2015
    (18th)

1   9/27/2014
    (11th)

1   8/17/2014
    (10th)

1   7/26/2014
    (4th)

# Exhibit C
## Reported Areas



10-20-15 (Google Map of reported areas http://www.spc.noaa.gov/climo/rm.php?rpt=151020_rpts )

10-18-2015 (Google Map of reported areas http://www.spc.noaa.gov/climo/rm.php?rpt=151018_rpts )



# Exhibit D

## Weather Verification





rvices (/)

≡                          Weather Verification Services (/)

# *i* Terms & Conditions

Welcome to CoreLogic Spatial Solutions LLC (Weather Fusion) and our WeatherFusion.com website ("site"). If you visit and/or purchase products or services within this website, you accept these conditions. Please read them carefully.

Last Updated February 5, 2013

## Privacy

Please review our **Privacy Notice (/privacy)**, which also governs your visit to our website, to understand our practices.

## Electronic Communications

When you visit WeatherFusion.com or send e-mails to us, you are communicating with us electronically. You consent to receive communications from us electronically. We will communicate with you by e-mail or by posting notices on this site. You agree that all agreements, notices, disclosures and other communications that we provide to you electronically satisfy any legal requirement that such communications be in writing.

## Copyright

All content included on this site, such as text, graphics, logos, button icons, images, audio clips, digital downloads, data compilations, and software, is the property of Weather Fusion or its content suppliers and protected by United States and international copyright laws. The compilation of all content on this site is the exclusive property of Weather Fusion, with copyright authorship for this collection by Weather Fusion, and protected by U.S. and international copyright laws. The software application provider and author for "Concrete5", is used under the Open Software License (3.0) and all original authorship and credit for Concrete5 remains the intellectual rights of www.concrete5.org.

# Trademarks

Weather Fusion's trademarks and trade dress may not be used in connection with any product or service that is not Weather Fusion's, in any manner that is likely to cause confusion among customers, or in any manner that disparages or discredits Weather Fusion. All other trademarks not owned by Weather Fusion or its subsidiaries that appear on this site are the property of their respective owners, who may or may not be affiliated with, connected to, or sponsored by Weather Fusion or its subsidiaries.

# License & Site Access

Weather Fusion grants you a limited license to access and make personal use of this site and not to download (other than page caching) or modify it, or any portion of it, except with express written consent of Weather Fusion. Except as further specified below, this license does not include any resale or commercial use of this site or its contents: any collection and use of any product listings, descriptions, or prices: any derivative use of this site or its contents: any downloading or copying of account information for the benefit of another merchant: or any use of data mining, robots, or similar data gathering and extraction tools. This site or any portion of this site may not be reproduced, duplicated, copied, sold, resold, visited, or otherwise exploited for any commercial purpose without express written consent of Weather Fusion. You may not frame or utilize framing techniques to enclose any trademark, logo, or other proprietary information (including images, text, page layout, or form) of Weather Fusion and our associates without express written consent. You may not use any meta tags or any other "hidden text" utilizing Weather Fusion's name or trademarks without the express written consent of Weather Fusion. Any unauthorized use terminates the permission or license granted by Weather Fusion. You are granted a limited, revocable, and nonexclusive right to create a hyperlink to the home page of WeatherFusion.com so long as the link does not portray Weather Fusion, its associates,

or their products or services in a false, misleading, derogatory, or otherwise offensive matter. You may not use any Weather Fusion logo(s) or other proprietary graphic or trademark as part of the link without express written permission.

Weather Fusion may provide its materials and services for use in association with certain commercial activities. Unless otherwise agreed in writing, any commercial uses of WeatherFusion.com are limited to those specified under this Agreement.

**Commercial Use for Roofing Contractors.** Roofing contractors ("Contractors") may use the Site and materials located thereon in the following manners: (1) providing customers or potential customers with a single copy of a historical weather report or event map (e.g., PointData™ or HailPaths™) for the customer's specific location; individual customers or potential customers may be provided a single copy of a historical weather report or event map, but historical weather reports and event maps may not otherwise be distributed on a widespread or public basis (for example, historical weather reports and event maps may not be included in advertising materials, mailings, materials on Contractor's web site or included in communications intended for an audience of more than one customer or a customer's insurance agents); or (2) providing a customer or potential customer's insurance company with a single copy of a historical weather report or event map for purposes of substantiating an insurance claim. Any documents provided by Contractor under these provisions shall include or retain copyright notices and prohibitions against unauthorized copying. Notwithstanding anything herein, Contractors shall not provide access to Contractor's account(s) with WeatherFusion.com to any third party. Other than customers or potential customers and insurance companies noted in this paragraph, Contractors shall not provide any materials provided by Weather Fusion to any third party without the express, written consent of Weather Fusion.

**Commercial Use for Insurance Companies.** Insurance companies ("Insurance Companies") may utilize the Site and materials located therein for internal purposes only to verify an individual customer's claim or generally analyze claims. Insurance Companies may make copies of materials provided by Weather Fusion solely as necessary for internal documentation purposes. Insurance Companies may provide customers with a single copy of materials provided by Weather Fusion for the sole purpose of substantiating acceptance or denial of a customer's insurance claim. Insurance Companies shall not provide access to Insurance Company's account(s) with Weather Fusion to any third party and, except as provided herein, shall not provide materials obtained from WeatherFusion.com to any third party without the prior, written consent of Weather Fusion.

**Commercial Use for Insurance Adjusters.**  Insurance adjusters ("Adjusters") may utilize the Site and materials located therein for internal purposes only to verify an individual customer's claim or generally analyze claims.  Adjusters may make copies of materials provided by Weather Fusion solely as necessary for internal documentation purposes.  Adjusters may provide customers with a single copy of materials provided by Weather Fusion for the sole purpose of substantiating acceptance or denial of a customer's insurance claim.  Adjusters shall not provide access to Adjuster's account with .com to any third party and, except as provided herein, shall not provide materials obtained from WeatherFusion.com to any third party without the prior, written consent of Weather Fusion.

**Commercial Use for Paintless Dent Repair (PDR**).  PDR companies ("PDR Companies") may utilize the Site and materials located therein for internal purposes only to find areas likely impacted by hail.  PDR Companies shall not provide access to PDR Company's account(s) with WeatherFusion.com to any third party.  PDR Companies shall not provide materials obtained from WeatherFusion.com to any third party without the prior, written consent of Weather Fusion.

# Your Membership Account

If you use this site, you are responsible for maintaining the confidentiality of your account and password and for restricting access to your computer, and you agree to accept responsibility for all activities that occur under your account or password.  You further represent and warrant that the information you provide in creating an account with WeatherFusion.com and using its services is true and accurate and that you are the sole person accessing the account with your user information.

If you are under 18, you may use our website only with involvement of a parent or guardian. Weather Fusion and its associates reserve the right to refuse service, terminate accounts, remove or edit content, or cancel orders in their sole discretion.

Weather Fusion may immediately terminate your account if any activity suggests your account has been compromised or shared with others or if you have breached any of your obligations under this Agreement.  If you believe your account has been terminated in error, you may submit a request to Weather Fusion to have your account termination reviewed.  If Weather Fusion determines in its discretion the termination was in error, you will be provided an account credit equal to the amount of time in which you were unable to access your account, which shall be your sole and exclusive remedy.

# Reviews, Comments, E-mails, & Other Content

Visitors may post reviews, comments, and other content: and submit suggestions, ideas, comments, questions, or other information, so long as the content is not illegal, obscene, threatening, defamatory, invasive of privacy, infringing of intellectual property rights, or otherwise injurious to third parties or objectionable and does not consist of or contain software viruses, political campaigning, commercial solicitation, chain letters, mass mailings, or any form of "spam." You may not use a false e-mail address, impersonate any person or entity, or otherwise mislead as to the origin of a credit/debit card or other content. Weather Fusion reserves the right (but not the obligation) to remove or edit such content, but does not regularly review posted content.

If you do post content or submit material, and unless we indicate otherwise, you grant Weather Fusion and its associates a nonexclusive, royalty-free, perpetual, irrevocable, and fully sublicensable right to use, reproduce, modify, adapt, publish, translate, create derivative works from, distribute, and display such content throughout the world in any media. You grant Weather Fusion and its associates and sublicensees the right to use the name that you submit in connection with such content, if they choose. You represent and warrant that you own or otherwise control all of the rights to the content that you post: that the content is accurate: that use of the content you supply does not violate this policy and will not cause injury to any person or entity: and that you will indemnify Weather Fusion or its associates for all claims resulting from content you supply. Weather Fusion has the right but not the obligation to monitor and edit or remove any activity or content. Weather Fusion takes no responsibility and assumes no liability for any content posted by you or any third party.

# Product Descriptions

Weather Fusion and its associates attempt to be as accurate as possible. ~~However, Weather Fusion does not warrant that product descriptions or other content of this site is accurate, complete, reliable, current, or error-free.~~ However, since our products are electronic in nature, please note that ALL SALES ARE FINAL AND WE DO NOT OFFER REFUNDS.

# Disclaimer of Warranties & Limitation of Liability

THIS SITE AND ASSOCIATED MATERIALS AND SERVICES ARE PROVIDED BY WEATHER FUSION ON AN "AS IS" AND "AS AVAILABLE" BASIS. WEATHER FUSION MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE

OPERATION OF THIS SITE OR THE INFORMATION, CONTENT, MATERIALS, OR PRODUCTS INCLUDED ON THIS SITE. YOU EXPRESSLY AGREE THAT YOUR USE OF THIS SITE IS AT YOUR SOLE RISK.

TO THE FULL EXTENT PERMISSIBLE BY APPLICABLE LAW, WEATHER FUSION DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. WEATHER FUSION DOES NOT WARRANT THAT THIS SITE, ITS SERVERS, OR E-MAIL SENT FROM WEATHER FUSION.COM ARE FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS. WEATHER FUSION WILL NOT BE LIABLE FOR ANY DAMAGES OF ANY KIND ARISING FROM THE USE OF THIS SITE, INCLUDING, BUT NOT LIMITED TO DIRECT, INDIRECT, INCIDENTAL, PUNITIVE, AND CONSEQUENTIAL DAMAGES.

CERTAIN STATE LAWS DO NOT ALLOW LIMITATIONS ON IMPLIED WARRANTIES OR THE EXCLUSION OR LIMITATION OF CERTAIN DAMAGES. IF THESE LAWS APPLY TO YOU, SOME OR ALL OF THE ABOVE DISCLAIMERS, EXCLUSIONS, OR LIMITATIONS MAY NOT APPLY TO YOU, AND YOU MIGHT HAVE ADDITIONAL RIGHTS.

# Limitation of Liability

**Weather Fusion WILL NOT BE LIABLE FOR DAMAGES OF ANY KIND, WHETHER ACTUAL, PUNITIVE, INCIDENTAL OR CONSEQUENTIAL, ARISING FROM THE USE OF THIS SITE, OR PRODUCTS, PROGRAMS OR SERVICES AVAILABLE ON THIS SITE, THE UNAVAILABILITY OF THIS SITE, DAMAGE TO YOUR COMPUTER, OR ANY LOSS OF DATA OR BUSINESS INTERRUPTION RESULTING FROM THE USE OF THIS SITE, EVEN IF WEATHER FUSION HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.**

**IF YOU ARE DISSATISFIED WITH ANY PORTION OF THIS SITE, OR THE PRODUCTS, PROGRAMS OR SERVICES OFFERED IN THIS SITE OR WITH ANY OF THESE TERMS, YOUR SOLE AND EXCLUSIVE REMEDY IS TO DISCONTINUE USING THE SITE AND ANY PRODUCTS, SERVICES OR PROGRAMS PROVIDED THROUGH THIS SITE.**

**THE NEGATION OF DAMAGES SET FORTH ABOVE ARE FUNDAMENTAL ELEMENTS OF THE BASIS OF THE BARGAIN BETWEEN YOU AND US.  THE SITE AND THE INFORMATION WOULD NOT BE PROVIDED WITHOUT SUCH LIMITATIONS.  NO ADVICE**

OR INFORMATION, WHETHER ORAL OR WRITTEN, OBTAINED BY YOU FROM US
THROUGH THE SITE SHALL CREATE ANY WARRANTY, REPRESENTATION OR
GUARANTEE NOT EXPRESSLY STATED IN THIS AGREEMENT.

# Applicable Law

By visiting WeatherFusion.com, creating an account with WeatherFusion.com or obtaining
materials from WeatherFusion.com, you agree that the laws of the state of Oklahoma, without
regard to principles of conflict of laws, will govern these Conditions of Use and any dispute of
any sort that might arise between you and Weather Fusion or its associates.

# Disputes

Any dispute relating in any way to your visit to WeatherFusion.com or to products you purchase
through WeatherFusion.com shall be submitted to confidential arbitration in Oklahoma, except
that, to the extent you have in any manner violated or threatened to violate Weather Fusion's
intellectual property rights, Weather Fusion may seek injunctive in addition to any other available
relief in any state or federal court in the state of Oklahoma, and you consent to exclusive
jurisdiction and venue in such courts. Arbitration under this agreement shall be conducted under
the rules then prevailing of the American Arbitration Association. The arbitrator's award shall be
binding and may be entered as a judgment in any court of competent jurisdiction. To the fullest
extent permitted by applicable law, no arbitration under this Agreement shall be joined to an
arbitration involving any other party subject to this Agreement, whether through class arbitration
proceedings or otherwise.

# Site Policies, Modification, & Severability

Please review our other policies, posted on this site. These policies also govern your visit to
WeatherFusion.com. We reserve the right to make changes to our site, policies, and these
Conditions of Use at any time. If any of these conditions shall be deemed invalid, void, or for any
reason unenforceable, that condition shall be deemed severable and shall not affect the validity
and enforceability of any remaining condition.

# Bing Maps Terms of Use

By using the Bing Maps functionality on WeatherFusion.com, you agree to abide by the Bing
Maps Terms of Use (http://www.microsoft.com/maps/product/terms.html). Please visit
http://www.microsoft.com/maps/product/terms.html

(http://www.microsoft.com/maps/product/terms.html) for more information.

# Questions

Questions regarding our Conditions of Usage, Privacy Policy (/privacy), or other policy related material can be directed to our support staff by emailing us at: help@weatherfusion.com (mailto:help@weatherfusion.com)

+1 (888) 929-4245 (tel:18889294245)          Contact Us (/contact-us)

201 Stephenson Pkwy Suite 4300D
Norman, OK 73072

©2016 CoreLogic

Terms and Conditions (/terms-and-conditions)     Privacy Policy (/privacy)

Exhibit C



PH 602.957.8800 | FX 602.992.2514
TOLL FREE: 877.992.7577
www.SkiptonInc.com

CORPORATE OFFICE
8710 E. Vista Bonita Dr.
Scottsdale, AZ 85255

**SKIPTON**
claims management

*SENT VIA U.S. MAIL AND ELECTRONIC MAIL TO: Rich@deanshomer.com*

November 11, 2016

Richard D. Pineda
Deans & Homer
Managing Underwriters for
Riverport Insurance Company
Claim#: 2778502-02
2920 E Camelback Rd. STE 240
Phoenix AZ 85016

> Client/Insured: Manios Properties, LLC
> Loss Location: 10201 N 35th Avenue Phoenix, AZ
> Date of Loss: 2015-10-25
> Claim #: 2778502-02

Dear Mr. Pineda,

We are writing you today to inquire on the status of the Assured's claim and to use this opportunity to point out several areas of concern with Riverport's handling of their Assured's claim. Surely, as the adjuster handling this claim you are familiar with Arizona law with regards to claims handling and the statutes which regulate the way Insurers handle the processing of claims. We bring this to your attention as we believe that several of these requirements have not been met in Riverport's processing of this claim. Allow us to explain.

Arizona Revised Statute 20-461. <u>Unfair claim settlement practices</u>

A. A person shall not commit or perform with such a frequency to indicate as a general business practice any of the following:

- 2. Failing to acknowledge and act reasonably and promptly upon communications with respect to claims arising under an insurance policy.

On September 2, 2016, we sent a detailed explanation of the Assured's position with regard to the coverage denial along with multiple requests for documents for which we have not received. This communication was sent nearly 3 months ago yet Riverport and their representatives have never responded. In addition, on October 20, 2016, nearly a month ago, we submitted the Assured's claim for hail related damages along with a

ARIZONA . CALIFORNIA . FLORIDA . ILLINOIS . NEVADA . TEXAS

Riverport Insurance Company:
Re: Manios Properties, LLC: Claim #: 2778502
November 11 2016
Page 2 of 5

request for payment which has also gone completely ignored. Clearly, Riverport's failure to respond to the Assured's requests for documents and their refusal to address the ongoing coverage matter does not meet the requirements as specified above.

- 4. Refusing to pay claims without conducting a reasonable investigation based upon all available information.

As you will note from our September 2, 2016 communication, it is our position that Riverport purposefully ignored easily available information which would support coverage for the Assured's claim, in favor of information that supports their intended denial of coverage for this loss. You may wish to review this portion of our letter which stated as follows:

"With regard to Riverport's contention that the hail came from a previous storm, we ask that you provide some sort of support for your statement that there were damages that pre-dated the initiation of this policy. This would be easily accomplished with the release of the requested underwriting documents inclusive of the property inspection report showing the age and condition of the roof when the policy was placed.

Riverport's denial of coverage continues with their reliance on a hail map report from Core Logic. We attempted to verify Riverport's determination of the size of hail as reported by Core Logic and found no hail reports for either of the dates referenced in Riverport's denial of coverage. We did; however, find multiple hail maps available for purchase with the hail size reported of 1" or more within your date range of October 15-25, 2015, with the most significant of those storms occurring on October 20, 2015. We believe that this is the correct date of loss, as we have recently settled a hail storm claim on this date on the K Mart building roof just down the street from this insured premises. This building showed clear evidence of hail damages from hail stones in excess of one inch (1"). A screenshot of these maps has been attached for your review.

Additionally, we did some basic research on the size of hail as reported to have affected the Assured's property during the date range referenced in the denial letter. As you will see from the attached report and map from the National Oceanic and Atmospheric Administration, NOAA.gov, that hail of 1" was reported almost directly on the Assured's property. We also found a report from interactivehailmaps.com that reported "hail of 1.00 inches reported near 35th Ave and Peoria, which is the closest intersection to that of the Assured's property. Clearly, these additional hail maps lend credibility to the fact that this storm was likely larger than being characterized by Riverport Insurance.

Moreover, a critical review of the hail reporting website in which Riverport Insurance is relying upon, states that they do "not warrant that product descriptions or other content on this site is accurate, complete, reliable, current, or error-free. Thus leading us to believe that the characterization of the hail being too small to cause the damage to the Assured's property could not be as dispositive as

Riverport Insurance Company:
Re: Manios Properties, LLC: Claim #: 2778502
November 11 2016
Page 3 of 5

Riverport would like us to believe.

With respect to Riverport's determination that "The roof and HVAC units reflected hail hits that were over 1" in size" we believe this is an overestimation of size of the hail damages. While some hits may appear to be over an inch in size, there are many that were significantly smaller and caused just as much if not more damage than the few larger hits. Obviously, a hail storm does not necessarily produce consistently sized hailstones. Hailstones form in the atmosphere and fall to the ground in varying size and sometime lump configurations.

We have attached several photos of the largest hits found on site and the surrounding much smaller hail damage. As you will see from the attached photo of the damages account for a size range of .5" to less than 1" in size.

What is clear from the denials of coverage provided is that Riverport was not investigating this claim and looking to provide the coverage the Assured purchased and expected from Riverport. Rather Riverport seems to be on a quest to avoid payment of this claim through a biased and results oriented claim investigation. How else can one explain how Riverport missed the hailstorm maps that show 1" hail at this site during the period in question.

Furthermore, Riverport has not provided the Assured with any sort of evidence to support their coverage position including but not limited to, the Core Logic report, the Independent adjuster's investigation report, or any of the underwriting documents showing the condition of the roof when Riverport began insuring the property. Surely, if Riverport Insurance is relying upon these documents as a basis of their denial of coverage, the Assured would be entitled to copy of them."

Additionally, we wish to address Riverport's continued refusal to provide a certified copy of the Assured's policy. Certainly, you understand that the purpose for our requesting a certified copy of the Assured's policy is to be sure that Riverport has provided a true and complete copy of the policy contract and all applicable endorsements. This we believe is the information the Arizona Statutes require to be rendered upon demand, as necessary claim forms, instruction, etc. To provide an uncertified copy of some policy forms does not meet Riverport's obligation to provide "reasonable assistance so that first party claimants can comply with the policy conditions."  How are we to know if what Riverport has provided is a true and complete copy of the Assured's policy and that nothing was left out or added by endorsement of the policy. This is not an unreasonable request, and we wish to point out that Riverport is the first insurance company that we have worked with that has taken the position that they are not obligated to provide a certified copy of the policy. This raises our interest as to what exactly is Riverport hiding.

Moreover, you may also note our request for a copy of the Assured's policy application and the underwriting documents that show the property inspection of the conditions of the roof at the time of placement of coverage along with any documents used in determining coverage for this claim as follows:

Riverport Insurance Company:
Re: Manios Properties, LLC: Claim #: 2778502
November 11 2016
Page 4 of 5

"As you certainly should be aware, in Arizona the duty of good faith and fair dealing is implied in every contract of insurance. "An insurance contract is not an ordinary commercial bargain; 'implicit in the contract and the relationship Is the insurer's obligation to play fairly with its insured." *Id.* (quoting *Rawlings v. Apodaca*, 151 Ariz. 149,154, 726 P.2d 565, 570 (1986). "The insurer has 'some duties of a fiduciary nature,' including '[e]qual consideration, fairness and honesty.'" *Id.* (quoting *Rawlings*, 151 Ariz. At 115, 726 P. 2d at 571).

In order to "act in good faith" and give "equal consideration" requires engaging in a transparent claims process, whereby there is no game playing or hiding of documents, but rather all of the cards are on the table. Riverport's refusal to share crucial claim documents utilized in the decision to affirm or deny coverage is a direct violation of this implied relationship between the contractual parties.

Riverport's refusal to release a copy of the Assured's policy application and the underwriting documents that show the property inspection of the conditions of the roof at the time of placement of coverage is not just a violation of the covenant of good faith it is a violation of the Arizona Administrative Code R20-6-801 D(2) which states that:

"No agent shall conceal from first party claimant's benefits, coverages or other provisions of any insurance policy or insurance contract when such benefits, coverages, or other provisions are pertinent to a claim."

With that said, we hereby request any and all documents utilized in the determination of coverage for this loss including but not limited to the Core Logic Hail Report, any and all field inspection reports, any and all applications and or inspections conducted in the placement of the insurance contract. We further request that Riverport reconsider their position with respect to coverage for this loss."

Riverport has made a poorly reasoned coverage decision, based upon highly questionable resource information. However, rather than take the professional approach to this claim, which would entail a reasonable examination of the resource information we provided and a critical look that the information they based their denial of coverage upon, Riverport just keeps on digging a deeper hole for themselves. At a time when transparency and judicious conduct should prevail, Riverport seems to believe that refusing to provide documents and ignoring communications and evidence will somehow make this claim go away. Riverport has obviously not done their homework on Skipton Claims Management.

We continue to await Riverport's anticipated response and payment of the Assured's claim.

Sincerely,

ARIZONA . CALIFORNIA . FLORIDA . ILLINOIS . NEVADA . TEXAS

Riverport Insurance Company:
Re: Manios Properties, LLC: Claim #: 2778502
November 11 2016
Page 5 of 5

**Justin Skipton**

Executive General Adjuster for
Skipton & Associates, Inc.

Cc: Michael Poli, Esq. The Merlin Law Group (via email only): mpoli@merlinlawgroup.com]
   Manios Properties, LLC: joy@eaglecommercial.com
   Matt McColley: *claims@riverportinsurance.com*

ARIZONA . CALIFORNIA . FLORIDA . ILLINOIS . NEVADA . TEXAS

# EXHIBIT 4

1  Michael N. Poli (State Bar No. 006431)
   MPoli@merlinlawgroup.com
2  Kesha A. Hodge (State Bar No. 021824)
3  KHodge@merlinlawgroup.com
   MERLIN LAW GROUP, P.A.
4  2999 North 44th Street, Suite 520
5  Phoenix, Arizona 85018
   Telephone:   (480) 315-9980
6  Facsimile:   (480) 315-9984
7  *Attorneys for Plaintiff*

**COPY**

MAY   3 2017



MICHAEL K. JEANES, CLERK
B. COLWELL
DEPUTY CLERK

8               **ARIZONA SUPERIOR COURT**

9               **MARICOPA COUNTY**   CV2017-006038

10

11  MANIOS PROPERTIES, LLC, a California          Case No.:
    limited liability company,
12

13               Plaintiff,                       **CERTIFICATE OF**
                                                  **COMPULSORY ARBITRATION**
14       v.

15

16  RIVERPORT INSURANCE COMPANY OF
    CALIFORNIA, an Iowa corporation,
17
                 Defendant.
18

19       The undersigned certifies that the largest award sought by Plaintiff Manios Properties,

20  LLC, including punitive damages, but excluding interest, attorneys' fees, and costs do exceed the

21  limits set by Local Rule for compulsory arbitration.  This case is **not** subject to the Uniform Rules

22  of Procedure for Arbitration.

23       RESPECTFULLY SUBMITTED this 3rd day of May 2017.

24                            MERLIN LAW GROUP, P.A.

25

26                            Michael N. Poli, Esq.
                              Kesha A. Hodge, Esq.
27                            *Attorneys for Plaintiff*

T1632705 I.DOCX.1                      1

# EXHIBIT 5

**COPY**

MAY   3 2017

MICHAEL K. JEANES, CLERK
B. COLWELL
DEPUTY CLERK

1  Michael N. Poli (State Bar No. 006431)
2  MPoli@merlinlawgroup.com
   Kesha A. Hodge (State Bar No. 021824)
3  KHodge@merlinlawgroup.com
   MERLIN LAW GROUP, P.A.
4  2999 North 44th Street, Suite 520
5  Phoenix, Arizona 85018
   Telephone:    (480) 315-9980
6  Facsimile:    (480) 315-9984
7  *Attorneys for Plaintiff*

8              **ARIZONA SUPERIOR COURT**
9
10          **MARICOPA COUNTY** CV2017-006038

11  MANIOS PROPERTIES, LLC, a California     Case No.:
    limited liability company,
12
13                  Plaintiff,              **DEMAND FOR JURY TRIAL**
14          v.
15
16  RIVERPORT INSURANCE COMPANY OF
    CALIFORNIA, an Iowa corporation,
17
                    Defendant.
18

19          Pursuant to the provisions of Arizona Rule of Civil Procedure 38(b), Plaintiff Manios
20  Properties, LLC hereby requests a trial by jury of all issues triable of right by a jury in the above-
21  captioned action.
22          RESPECTFULLY SUBMITTED this 3rd day of May 2017.
23                                  MERLIN LAW GROUP, P.A.
24
25                                  _____
                                    Michael N. Poli, Esq.
26                                  Kesha A. Hodge, Esq.
                                    *Attorneys for Plaintiff*
27

T1612999.DOCX.1                           1

# EXHIBIT 6

DL Investigations & Attorney Support LLC
7501 N. 16th Street, Suite 200
Phoenix, AZ 85020
(602) 285-9901

**COPY**

Inv. #

**117981**

MANIOS PROPERTIES, LLC

**SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA**

MAY 1 0 2017

MICHAEL K. JEANES, CLERK
A. FIMBRES
DEPUTY CLERK

Plaintiff / Petitioner,

vs.

RIVERPORT INSURANCE COMPANY OF CALIFORNIA

*COPY*

NO.   **CV2017-006038**

Defendant / Respondent.

CERTIFICATE OF SERVICE

<u>Geoffrey Roberts</u>                              , the undersigned certifies under penalty of perjury:  That I am fully qualified pursuant
to RCP 4 (d), 4 (e), 45 (b) and/or ARS 13-4072, to serve process in this case, and received for service the following documents in this
action:
**SUMMONS & COMPLAINT, CERTIFICATE OF ARBITRATION, DEMAND FOR JURY TRIAL**

from                  Kesha A. Hodge c/o Merlin Law Group, P.A.                  on        **5/4/17**        ;
that I personally served copies of these documents on those named below in the manner and time and place shown; and except where
noted, all services were made in Maricopa County, Arizona.

NAME:   RIVERPORT INSURANCE COMPANY c/o Arizona Department of Insurance, Director of Insurance

DATE & TIME:  5/8/2017 11:30AM
PLACE &         2910 N. 44TH STREET, STE 210 PHOENIX AZ 85018, which is his/her place of business.
MANNER:         By serving ELIZABETH VILLALINO, ADMINISTRATIVE ASSISTANT III, a person authorized to accept
                such service on their behalf, in person.

Tendering a $15.00 search fee and two sets of documents.  5/4/17 @ 3:40PM "OF CALIFORNIA" MUST BE REMOVED.  CLIENT
SAID OK. Description of the Named: Female, Age: 20's, Ht: 5' 8in., Wt: 135, Eyes: BROWN, Hair: BROWN, Ethnicity: HISPANIC

| Statement of Costs | |
|---|---|
| Services | $16.00 |
| Mileage | $24.00 |
| Sp. Handl. | $24.00 |
| Witness | |
| Advances | |
| Cert. Prep | $10.00 |
| Other | |
| **Total** | **$74.00** |

Affiant  Registered in
**Maricopa County**

The above is covered by A.R.S. as amended 41-314 & 11-45 and Rules 4, 5 and 45.



**Arizona Department of Insurance**
# RECEIPT OF PAYMENT

*The mission of the Department of Insurance is to faithfully execute state insurance laws in a manner that protects insurance consumers and encourages robust competition and economic development.*

| Date: | 05/08/2017 |
|---|---|
| Receipt #: | 0061850 |

ADDITIONAL INFORMATION:
RIVERPORT INSURANCE COMPANY
CV2017-006038

| Payor/Licensee Name: | MERLIN LAW GROUP, P.A. |
|---|---|

| Description of Fee | Amount |
|---|---|
| OTHER, SERVICE OF PROCESS FEES | $15.00 |
| **Transaction Total:** | **$15.00** |

| Payment Information | |
|---|---|
| Amount Paid by Check 1039: | $15.00 |
| Credit Tendered: | $0.00 |
| Cash Tendered: | $0.00 |
| Change Returned: | $0.00 |
| **Payment Total:** | **$15.00** |

The Arizona Department of Insurance continually works to improve service to its customers.
Please send, fax or e-mail any ideas on how we can improve to

Scott B. Greenberg, Chief Operating Officer
2910 North 44th Street, Suite 210
Phoenix, Arizona 85018-7269
Fax: 602.364.2400
e-mail: SGreenberg@azinsurance.gov.

# EXHIBIT 7

**In the Superior Court of the State of Arizona**
**In and For the County of** Maricopa

Case Number _____

## CIVIL COVER SHEET- NEW FILING ONLY
(Please Type or Print)

Is Interpreter Needed?  ☐ Yes  ☒ No
If yes, what language:

_____

Plaintiff's Attorney  Kesha A. Hodge

Attorney Bar Number  021824

| Plaintiff's Name(s):  (List all) | Plaintiff's Address: | Phone #: | Email Address: |
|---|---|---|---|
| Manios Properties, LLC | 2999 N. 44th Street, Suite 520, Phoenix, AZ 85018 | 480-315-9980 | khodge@merlinlawgroup.com |

(List additional plaintiffs on page two and/or attach a separate sheet).

Defendant's Name(s):  (List All)    Riverport Insurance Company of California

(List additional defendants on page two and/or attach a separate sheet)

EMERGENCY ORDER SOUGHT:    ☐ Temporary Restraining Order    ☐ Provisional Remedy    ☐ OSC

☐ Election Challenge    ☐ Employer Sanction    ☐ Other _____
(Specify)

☐ RULE 8(h) COMPLEX LITIGATION APPLIES. Rule 8(h) of the Rules of Civil Procedure defines a "Complex Case" as civil actions that require continuous judicial management. A typical case involves a large number of witnesses, a substantial amount of documentary evidence, and a large number of separately represented parties.

(Mark appropriate box on page two as to complexity, **in addition** to the Nature of Action case category.)

☒ THIS CASE IS ELIGIBLE FOR THE COMMERCIAL COURT UNDER EXPERIMENTAL RULE 8.1. (Maricopa County only.) Rule 8.1 defines a commercial case and establishes eligibility criteria for the commercial court. Generally, a commercial case primarily involves issues arising from a business contract or business transaction. However, consumer transactions are not eligible. A consumer transaction is one that is primarily for personal, family or household purposes. **Please review Rule 8.1 for a complete list of the criteria.** See http://www.superiorcourt.maricopa.gov/commercial-court/. You must check this box if this is an eligible commercial case. **In addition, mark the appropriate box below in the "Nature of Action" case category.** The words "commercial court assignment requested" must appear in the caption of the original complaint.

## NATURE OF ACTION

(Place an "X" next to the **one** case category that most accurately describes your primary case.)

**100 TORT MOTOR VEHICLE:**

☐ 101 Non-Death/Personal Injury
☐ 102 Property Damage
☐ 103 Wrongful Death

**110 TORT NON-MOTOR VEHICLE:**

☐ 111 Negligence
☐ 112 Product Liability – Asbestos
☐ 112 Product Liability – Tobacco
☐ 112 Product Liability – Toxic/Other
☐ 113 Intentional Tort

☐ 114 Property Damage
☐ 115 Legal Malpractice
☐ 115 Malpractice – Other professional
☐ 117 Premises Liability
☐ 118 Slander/Libel/Defamation
☐ 116 Other (Specify) _____

**120 MEDICAL MALPRACTICE:**

☐ 121 Physician M.D.    ☐ 123 Hospital
☐ 122 Physician D.O.    ☐ 124 Other

Case No._____

## 130 CONTRACTS:

☐ 131 Account (Open or Stated)
☐ 132 Promissory Note
☐ 133 Foreclosure
☐ 138 Buyer-Plaintiff
☐ 139 Fraud
☒ 134 Other Contract (i.e. Breach of Contract)
☐ 135 Excess Proceeds-Sale
☐ Construction Defects (Residential/Commercial)
    ☐ 136 Six to Nineteen Structures
    ☐ 137 Twenty or More Structures

## 150-199 OTHER CIVIL CASE TYPES:

☐ 156 Eminent Domain/Condemnation
☐ 151 Eviction Actions (Forcible and Special Detainers)
☐ 152 Change of Name
☐ 153 Transcript of Judgment
☐ 154 Foreign Judgment
☐ 158 Quiet Title
☐ 160 Forfeiture
☐ 175 Election Challenge
☐ 179 NCC-Employer Sanction Action
    (A.R.S. §23-212)
☐ 180 Injunction against Workplace Harassment
☐ 181 Injunction against Harassment
☐ 182 Civil Penalty
☐ 186 Water Rights (Not General Stream Adjudication)
☐ 187 Real Property
☐ Special Action against Lower Courts
    (See lower court appeal cover sheet in Maricopa)

☐ 194 Immigration Enforcement Challenge
    (§§1-501, 1-502, 11-1051)

## 150-199 UNCLASSIFIED CIVIL:

☐ Administrative Review
    (See lower court appeal cover sheet in Maricopa)
☐ 150 Tax Appeal
    (All other tax matters must be filed in the AZ Tax
    Court)
☐ 155 Declaratory Judgment
☐ 157 Habeas Corpus
☐ 184 Landlord Tenant Dispute- Other
☐ 190 Declaration of Factual Innocence
    (A.R.S. §12-771)
☐ 191 Declaration of Factual Improper Party Status
☐ 193 Vulnerable Adult (A.R.S. §46-451)
☐ 165 Tribal Judgment
☐ 167 Structured Settlement (A.R.S. §12-2901)
☐ 169 Attorney Conservatorships (State Bar)
☐ 170 Unauthorized Practice of Law (State Bar)
☐ 171 Out-of-State Deposition for Foreign Jurisdiction
☐ 172 Secure Attendance of Prisoner
☐ 173 Assurance of Discontinuance
☐ 174 In-State Deposition for Foreign Jurisdiction
☐ 176 Eminent Domain– Light Rail Only
☐ 177 Interpleader– Automobile Only
☐ 178 Delayed Birth Certificate (A.R.S. §36-333.03)
☐ 183 Employment Dispute- Discrimination
☐ 185 Employment Dispute-Other
☐ 195(a) Amendment of Marriage License
☐ 195(b) Amendment of Birth Certificate
☐ 163 Other _____
                   (Specify)

## COMPLEXITY OF THE CASE

If you marked the box on page one indicating that Complex Litigation applies, place an "X" in the box of no less than one of the following:

☐ Antitrust/Trade Regulation
☐ Construction Defect with many parties or structures
☐ Mass Tort
☐ Securities Litigation with many parties
☐ Environmental Toxic Tort with many parties
☐ Class Action Claims
☐ Insurance Coverage Claims arising from the above-listed case types
☐ A Complex Case as defined by Rule 8(h) ARCP

**Additional Plaintiff(s)**

_____

_____

**Additional Defendant(s)**

_____

_____

ALL RIGHTS RESERVED

# EXHIBIT 8

Skip To MainContent

[ Search ]

 **ADVERTENCIA:** Estafa por medio de llamadas telefónicas y correo electrónico.   **Leer Mas...**

Civil Court Case Information - Case History

## Case Information

Case Number:  CV2017-006038        Judge:      Brodman, Roger
File Date:    5/3/2017             Location:   Downtown
Case Type:    Civil

## Party Information

| Party Name | Relationship | Sex | Attorney |
|---|---|---|---|
| Manios Properties L L C | Plaintiff | | Kesha Hodge |
| Riverport Insurance Company Of California | Defendant | | Pro Per |

## Case Documents

| Filing Date | Description | Docket Date | Filing Party |
|---|---|---|---|
| 5/10/2017 | AFS - Affidavit Of Service | 5/11/2017 | |
| **NOTE:** RIVERPORT INSURANCE COMPANY | | | |
| 5/10/2017 | SUM - Summons | 5/11/2017 | |
| 5/3/2017 | COM - Complaint | 5/5/2017 | |
| 5/3/2017 | CCN - Cert Arbitration - Not Subject | 5/5/2017 | |
| 5/3/2017 | CSH - Coversheet | 5/5/2017 | |
| 5/3/2017 | NJT - Not Demand For Jury Trials | 5/5/2017 | |

## Case Calendar

**There are no calendar events on file**

## Judgments

**There are no judgments on file**